[Civ. No. 51133. Second Dist., Div. Three. Apr. 27, 1978.]

GLEN O. ARBAUGH, Plaintiff and Respondent, v.
PROCTER & GAMBLE MANUFACTURING COMPANY,
Defendant and Appellant;
TRANSPORT INDEMNITY COMPANY, Intervener and Respondent.

502

**COUNSEL**

Fernandes & Le Berthon and James Fernandes for Defendant and Appellant.

Lascher & Wilner, Lowen H. Stanley and Edward L. Lascher for Plaintiff and Respondent.

Lascher & Wilner, Gerald G. Reppetto, Dryden, Harrington & Swartz and Peter Abrahams for Intervener and Respondent.

## OPINION

GOERTZEN, J.[*]—Defendant Procter & Gamble Manufacturing Company (hereinafter defendant) appeals from a judgment entered in favor of plaintiff Glen O. Arbaugh (plaintiff) and plaintiff-in-intervention Transport Indemnity Company (intervener).

Plaintiff brought this action against defendant to recover damages for personal injuries he sustained at a warehouse owned by defendant while in the course of his employment for Signal Trucking Co. (Signal). The intervener herein was Signal's workers' compensation insurance carrier at the time of the accident. Also named in plaintiff's action was Thompson Brothers, Inc., another trucking company which operated within defendant's warehouse; plaintiff and intervener both eventually settled with Thompson Brothers, however, and the action was dismissed as to that defendant.

### FACTS[1]

On November 5, 1971, plaintiff was working at defendant's Long Beach warehouse and soap loading dock while employed by Signal as a "spotter." Plaintiff's duties consisted of backing empty truck trailers up to the loading dock in their proper position (spotting) and then towing them away after they had been loaded.

After a trailer had been backed against the loading dock, the tractor would be disengaged so that it could be used to move other trailers. When this was done, a device known as a "nose cone" would be placed beneath the front end of the trailer to prevent it from tipping during the loading process. This device, which stood approximately 38 or 39 inches in height, consisted of a metal pipe rising vertically from the center of a horizontal truck wheel rim.

---

[*]Assigned by the Chairperson of the Judicial Council.

[1]Plaintiff complains that defendant's opening brief fails to conform with California Rules of Court, rule 15(a) (requiring that the brief make "appropriate reference to the record") and rule 13 (requiring that the brief accurately state a summary of material facts and the record below). Such failure may constitute a waiver of error. (See *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Harbor Ins. Co.* v. *Resolute Ins. Co.* (1972) 23 Cal.App.3d 190, 197 [99 Cal.Rptr. 916].) We agree that defendant's brief is less than a model of appellate practice, although it does, in fact, make some reference to the record below. In view of the thorough summary of facts given by plaintiff, we will disregard the defects in defendant's brief and consider the case on its merits. (*Copfer* v. *Golden* (1955) 135 Cal.App.2d 623, 634-635 [288 P.2d 90]; see *Walker* v. *Porter* (1974) 44 Cal.App.3d 174, 177 [118 Cal.Rptr. 468].)

While the handling of nose cones was primarily the responsibility of Signal employees, defendant's employees also occasionally moved them. Employees were instructed to place nose cones which were not in use against the loading dock wall because of the safety hazard they represented. Despite this policy, nose cones were frequently left standing on the cement apron which led up to the loading dock in order to allow easy access to them.

On the day in question, plaintiff was seriously injured when his right foot landed on a misplaced nose cone as he was descending from a tractor-trailer which he had spotted at defendant's loading dock.

Plaintiff's action against defendant was based on theories of negligence, negligent maintenance of property, and breach of duty by a "statutory employer."[2] A bifurcated jury trial resulted in a special verdict wherein the jury determined that defendant and plaintiff's employer, Signal, had both been negligent, apportioning the negligence 50 percent to each; the jury found that plaintiff had not been negligent in caring for his own safety. The jury then awarded damages to plaintiff in the sum of $340,000 which included $44,836.17 in workers' compensation benefits which had previously been paid to plaintiff by intervener.

The court subsequently entered judgment against defendant and in favor of plaintiff in the sum of $294,163.83, and in favor of intervener in the sum of $21,918.08, the details of which are set forth *infra.*

## CONTENTIONS

Defendant makes the following contentions:

1. The court erred in its apportionment of the damages between defendant and plaintiff's employer (as represented herein by intervener);

2. The evidence was insufficient to support the verdict that plaintiff had not been negligent;

3. The court erred in instructing the jury;

4. Plaintiff's and intervener's counsel engaged in prejudicial misconduct in their arguments to the jury.

[2]See former Labor Code section 6304, since amended (Stats. 1971, ch. 1751, § 2, p. 3780, operative Apr. 1, 1972) so as to make the term "statutory employer" no longer applicable.

## Discussion

We find that defendant's last three contentions lack substantial merit and therefore affirm the judgment insofar as it adjudges defendant liable to plaintiff for his injuries. We conclude, however, that the court erred in allowing the intervener any recovery on its claim for reimbursement of workers' compensation benefits paid since the amount of total damages which could be attributed to the negligence of plaintiff's employer was greater than the sum of those payments.

### 1. *Apportionment of Damages*

The judgment entered by the court was determined as follows: The $340,000 damage figure arrived at by the jury was reduced by $44,836.17, the amount of workers' compensation benefits paid by the intervener; this sum was further reduced by $1,000, representing the amount received by plaintiff in settlement with Thompson Brothers, resulting in a judgment for plaintiff in the sum of $294,163.83. The court then entered judgment for intervener in the sum of $21,918.08, representing 50 percent (the percentage of negligence attributable to plaintiff's employer) of its lien claim for $44,836.17, minus $500 previously received by intervener from Thompson Brothers.[3]

Defendant contends that the court's apportionment of damages was in error insofar as it (1) failed to limit defendant's liability to 50 percent of plaintiff's damages, the proportionate share of defendant's fault; and (2) permitted intervener a reimbursement on its lien for compensation benefits paid when that lien represented less than 50 percent of plaintiff's total damages.

Defendant's contention is based primarily on the holding in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], which abrogated the doctrine of contributory negligence previously followed in this state in favor of a system of pure comparative negligence, whereby "liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault." (*Id.,* at p. 813; fn. omitted.)

■ Defendant's argument that it should have been held liable for no more than 50 percent of plaintiff's damages is untenable, however, in

---

[3]The court's apportionment of damages was consistent with the approach sanctioned by BAJI No. 15.14 et seq. (1977 Rev.). (See Use Note, BAJI (6th ed. 1977) pp. 672-679.)

light of the recent decision in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], wherein our Supreme Court held that the adoption of comparative negligence by this state did not compel the abandonment of the well-established doctrine of joint and several liability. As stated by the court: ". . . our adoption of comparative negligence to ameliorate the inequitable consequences of the contributory negligence rule does not warrant the abolition or contraction of the established 'joint and several liability' doctrine; each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury." (*Id.,* at p. 583.)

We note that it had been suggested previous to the decision in *American Motorcycle* that even if the courts chose to retain joint and several liability after *Li,* actions in which an employee injured in the course of his employment sues a responsible third party (the so-called third party suit) could be distinguished and treated differently. (Note, *Third Party and Employer Liability After* Nga Li v. Yellow Cab Company *for Injuries to Employees Covered by Workers' Compensation* (1977) 50 So.Cal.L.Rev. 1029, 1039.)

The reason for distinguishing such cases is not difficult to discern. In most third party suits, the employee has also made a claim for workers' compensation benefits from his employer, which benefits figure prominently in the determination of how damages should be allocated among the respective parties. Workers' compensation benefits are the product of a statutory system of employer liability not dependent upon proof of fault. (Cal. Const., art. XIV, § 4.) With certain exceptions not here relevant, an injured employee's only remedy against his employer is a claim for workers' compensation; thus, the employer is generally immune from tort liability. (Lab. Code, § 3601, subd. (a).) ▮ Furthermore, unless there is a written agreement to the contrary, an employer is not obligated to indemnify a third party who has been found liable to an employee who was injured as the result of the joint negligence of the employer and the third party. (Lab. Code, § 3864.) The adoption of comparative negligence in *Li* did not alter this last rule. (*E. B. Wills Co.* v. *Superior Court* (1976) 56 Cal.App.3d 650 [128 Cal.Rptr. 541].)

As a result of the above, the retention of joint and several liability in third party suits can produce the type of inequitable apportionment of damages apparent in the case at bench. Here, both defendant and Signal were found to be 50 percent negligent in causing plaintiff $340,000 in

damages. In absolute terms, each party's liability should have been $170,000. Yet, because Signal's liability was limited to workers' compensation benefits, which in this case totaled $44,836.17, the application of the rule of joint and several liability leaves defendant with a disproportionate share of damages to pay if plaintiff is to be fully compensated for his injuries.

■ We note that the court in *American Motorcycle* sought to avoid some of the inequities resulting from the retention of joint and several liability after *Li* by modifying the all-or-nothing rule of equitable indemnity previously followed in this state so as "to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 599.) As stated in the opinion, " '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were . . . unintentionally responsible, to be shouldered onto one alone, . . . while the latter goes scot free.' " (*Id.,* at p. 608, quoting Prosser, Law of Torts (4th ed. 1971) § 50, p. 307.) ■ The instant defendant, however, is not aided by the extension of the equitable remedy since, as the court recognized in a footnote, ". . . Labor Code section 3864 would normally preclude a third party tortfeasor from obtaining indemnification from the employer, even if the employer's negligence was a concurrent cause of the injury." (*Id.,* at p. 607, fn. 9; see *E. B. Wills Co.* v. *Superior Court, supra,* 56 Cal.App.3d 650, 653-655.) Nevertheless, it is implicit from the court's failure to otherwise distinguish third party suits that the inability of a third party tortfeasor to secure indemnification from a concurrently negligent employer will not prevent that third party from being held individually liable to an injured employee.

Other considerations compel this conclusion. First, the replacement of contributory negligence with a system of comparative fault was occasioned primarily by the recognized unfairness of preventing plaintiffs who were negligent in caring for their own safety from obtaining any recovery from other negligent parties; the impetus for the adoption of comparative negligence was not the desire to protect defendants from the consequences of their tortious acts. (See *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 589-590; *Li* v. *Yellow Cab Co.,* 13 Cal.3d 804, 809-812 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) Second, our Legislature has determined that a plaintiff injured in the course of his employment through the negligence of a third party should be entitled to recover "all damages" (Lab. Code, § 3852), and has further

recognized a plaintiff's right "to satisfy a judgment in full as against any tortfeasor judgment debtor" (Code Civ. Proc., § 875, subd. (g)). To deny application of the joint and several liability rule in third party actions would contravene these expressions of legislative intent by depriving some plaintiff-employees of maximum recovery for their injuries.

█ Defendant's contention that the intervener should have been denied any reimbursement for compensation benefits previously paid has considerably more merit. Pursuant to Labor Code sections 3852, 3853, and 3856, subdivision (b), an employer or his compensation insurance carrier may recover from the total damages awarded to an injured employee in an action against a third party tortfeasor any compensation benefits paid to the employee. In *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], however, the Supreme Court held that a concurrently negligent employer would be precluded from any reimbursement for compensation benefits previously paid an injured employee in order to prevent the employer from taking advantage of his own wrong (*id.,* at p. 72); the amount of benefits paid the employee would have to be subtracted from his total damages, though, to prevent a double recovery (*id.,* at p. 73). (See also *Roe* v. *Workmen's Compensation Appeals Board* (1974) 12 Cal.3d 884, 887 [117 Cal.Rptr. 683, 528 P.2d 771].)

It is apparent that the all-or-nothing approach of *Witt* v. *Jackson* is inconsistent with the holding in *Li* that liability should now be apportioned according to fault. (*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, 813.) The defense of employer's contributory negligence previously available to a third party tortfeasor must therefore give way to a system which allocates responsibility for damages owing to an injured employee on a comparative fault basis.

We conclude, however, that the approach taken by the trial court to determine the amount of reimbursement due the intervener was improper here since it unnecessarily exaggerated the already inequitable apportionment of damages which resulted from the application of comparative negligence principles to a third party suit. In this type of case, the third party tortfeasor should be required to reimburse the employer or his insurance carrier for compensation benefits paid only to the extent that such benefits have exceeded the proportionate share of damages attributable to the employer's negligence. Under this method of apportionment, the employer is liable for either the total amount of workers' compensation benefits paid or the difference between the third party's proportionate share of liability and the employee's total damages,

whichever is less. (See Note, *supra,* 50 So.Cal.L.Rev. 1029, 1045-1051.) This approach is thus in accord with the concern shown by the court in *American Motorcycle* that the entire burden of a loss for which two or more defendants were responsible should not be shouldered by one alone. (*American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.App.3d 578, 608.) Furthermore, implementation of the above-described rule will not contravene the policies of the workers' compensation system: employer liability will still be limited to the payment of compensation benefits (Lab. Code, § 3601, subd. (a)), while the employer's incentive for maintaining safe working conditions will be reinforced (Lab. Code, § 6400 et seq.).

In the case at bench, both defendant and Signal were found to be 50 percent negligent in causing plaintiff $340,000 in damages. Since compensation benefits paid by the intervener on behalf of Signal have so far amounted to only $44,836.17, which is less than 50 percent of plaintiff's total damages, intervener should have recovered nothing on its lien.[4]

2. *Sufficiency of the Evidence to Support the Jury's Finding That Plaintiff Was Not Himself Negligent*

Defendant contends that plaintiff was negligent in caring for his own safety as a matter of law. Its argument is as follows: (a) plaintiff, based on his long experience on the job, should have been well aware of the possible presence of nose cones near the parked trucks; (b) the cones were obvious to anyone who looked for them; (c) plaintiff, who apparently was not distracted, was negligent in failing to check the area where his feet were to land for the presence of nose cones prior to

---

[4]It is apparent from the above that the diverse purposes served by comparative negligence and workers' compensation make for a somewhat incongruous meshing of the two concepts in the third party suit. As stated by one commentator: "Because of the distinctive no-fault principles underlying workers' compensation law, and owing to the policy-oriented nature of the equitable, statutory and decisional rules controlling the workers' compensation/third-party liability situation, contemporary developments in negligence principles are not easily transferable from tort law to workers' compensation cases involving an employer or his insurance carrier's claim for reimbursement or credit. Workers' compensation principles do not lend themselves to the integration of the comparative negligence doctrine." (Comment, *Workers' Compensation/Third-Party Lawsuits: The Impact of the* Li *Comparative Negligence Doctrine* (1977) 11 U.S.F. L.Rev. 541, 585.)

The Supreme Court may address itself to some of the problems raised by the application of comparative negligence theory to the third party suit in a case currently pending before it, *Associated Construction & Engineering Co. v. Workers' Compensation Appeals Board* (L.A. 30693, hg. granted Oct. 25, 1976). The primary issue in that case is whether the doctrine of comparative negligence can be applied to an employer's claim for credit in an appeals board adjudication. (See 41 Cal.Comp.Cases 507 (1976).)

descending from his tractor, as a reasonably prudent person would have done.

Plaintiff testified that when he approached the loading dock with his truck, he saw a nose cone near a trailer which had already been spotted, as well as several other nose cones scattered about the area. After spotting his trailer, plaintiff dismounted by emerging from the tractor's door backwards, stepping on the running board and the front tire, and then dropping to the ground—a method he had used for seven and one-half years. A method of dismounting suggested by counsel for defendant, in which the tractor's battery box would be used as a stepping point, was claimed by plaintiff to be both dangerous and impractical. Plaintiff testified on direct examination that he had looked down before stepping off the tractor, but saw nothing in the area where he was going to land, although he later stated on cross-examination that he was not sure whether he had, in fact, checked the area.

■ Negligence on the part of the plaintiff is not established as a matter of law unless the only reasonable hypothesis is that such negligence existed. (*Mark* v. *Pacific Gas & Elec. Co.* (1972) 7 Cal.3d 170, 180 [101 Cal.Rptr. 908, 496 P.2d 1276]; *Evans* v. *Thomason* (1977) 72 Cal.App.3d 978, 986 [140 Cal.Rptr. 525].) When two or more inferences can be drawn from the evidence, the question of plaintiff's negligence is one for the trier of fact and the reviewing court may not substitute its judgment for that reached at trial. (*Mark* v. *Pacific Gas & Elec. Co.,* *supra*; *Callahan* v. *Gray* (1955) 44 Cal.2d 107, 111 [279 P.2d 963].) Although it may not have been the only inference permissible, we conclude that there was substantial evidence to support the jury's determination that plaintiff had not conducted himself in a negligent manner; this court is therefore powerless to decide otherwise. (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 63-64 [107 Cal.Rptr. 45, 507 P.2d 653]; *Metzger* v. *Barnes* (1977) 74 Cal.App.3d 6, 9-10 [141 Cal.Rptr. 257].)

*3. Alleged Error in Instructions*

At the conclusion of the liability portion of this bifurcated trial, the jury was instructed according to former BAJI No. 8.33 (5th ed., 1975 pocket pt.), which the court modified to read in pertinent part:

"An owner of property in control of premises where work is being done by employees of a contractor is an employer subject to the duty imposed

by the Labor Code ... to comply with the applicable safety provisions thereof.

"Where the owner retains only the right of general supervision over the premises to bring about a satisfactory completion of a contract, he is not an employer subject to the duties imposed by the Labor Code."

The jury was then read several sections of the Labor Code pertaining to the duty of an employer to provide a safe place to work. (Former Lab. Code, §§ 6400-6404, repealed by Stats. 1973, ch. 993, § 93, p. 1938, effective Oct. 1, 1973; replaced by Stats. 1973, ch. 993, § 96, p. 1939.)[5]

Finally, the jury was read the following modified version of BAJI No. 3.45 (6th ed. 1977): "If you find that Defendant Procter & Gamble or Plaintiff Arbaugh's employer, Signal Trucking, violated provisions of the Labor Code, just read to you, and that such violation was a proximate cause of the injury to Plaintiff, you will find that such violation was negligence unless such party proves by a preponderance of the evidence that it did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."

After the jury had been thus instructed, defendant requested the trial judge in chambers to modify the last instruction, BAJI No. 3.45, so as to make it explicit that the jury was not to consider the Labor Code safety provisions in its determination of defendant's liability unless it first found that defendant had retained control over the premises where plaintiff suffered his injury. Defendant contends on appeal that the instructions were misleading as given and prejudiced defendant's ability to establish its defense that it had turned over control of the premises to plaintiff's employer. This contention lacks merit.

■ Without considering plaintiff's argument that defendant's objection to the instructions came too late and that plaintiff would have been

[5]Had plaintiff's accident occurred after April 1, 1972, it would have been improper to instruct the jury concerning the possible application of these Labor Code provisions to defendant. Labor Code section 6304.5 provides in pertinent part: "Neither this division nor any part of this division [containing the Labor Code safety provisions referred to] shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer." (Added by Stats. 1971, ch. 1751, § 3, p. 3780, effective Apr. 1, 1972; see also fn. 2, *ante.*)

prejudiced by any modification of the instructions already given, we conclude that the instructions, read as a whole, were not misleading and instructed the jury fairly on the law then applicable. As was stated in *Yecny* v. *Eclipse Fuel Engineering Co.* (1962) 210 Cal.App.2d 192, 199 [26 Cal.Rptr. 402]: "If the instructions harmonize as a whole and fairly and accurately state the applicable law, a reversal may not be had because of verbal inaccuracies or because a separate instruction does not contain all of the elements which are to be gathered from the instructions as a whole." (See *Valdez* v. *J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 511 [124 Cal.Rptr. 467]; *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 630 [124 Cal.Rptr. 143].)

Here, the jury was instructed in former BAJI No. 8.33 that the Labor Code provisions would be applicable against defendant only if defendant was found to have been in control of the premises at the time of plaintiff's accident; it must be presumed that they followed this instruction before considering whether defendant had violated those provisions, as BAJI No. 3.45 then asked them to do.

### 4. *Misconduct of Counsel*

■ Defendant's final contention is that plaintiff's and intervener's counsel improperly referred to the relative economic statuses of plaintiff and defendant in their arguments to the jury in an effort to obtain a "sympathy verdict." As plaintiff has correctly pointed out, many of the examples of alleged misconduct set forth in defendant's opening brief do not accurately reflect the true state of the record below. In any event, defense counsel failed to utter one objection to the allegedly prejudicial arguments or to seek a jury admonition; as such, defendant's claim of misconduct is not cognizable on appeal. (*Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 303 [85 Cal.Rptr. 444, 466 P.2d 996]; *Brokopp* v. *Ford Motor Co.* (1977) 71 Cal.App.3d 841, 859-860 [139 Cal.Rptr. 888]; *Neumann* v. *Bishop* (1976) 59 Cal.App.3d 451, 468, fn. 3 [130 Cal.Rptr. 786].)

Since we have determined that defendant's contentions are not entirely meritless, we decline to impose sanctions for a frivolous appeal as requested by plaintiff.

That portion of the judgment awarding the plaintiff $294,163.83 as against defendant is affirmed; the portion of the judgment awarding intervener $21,918.08 on its complaint-in-intervention against defendant

is reversed. Plaintiff shall recover his costs on appeal from defendant. As between defendant and intervener, defendant shall recover from intervener 50 percent of its costs incurred in the preparation of the record on appeal, with each party otherwise bearing its own costs.

Potter, Acting P. J., and Allport, J., concurred.

The petition of the intervener and respondent for a hearing by the Supreme Court was denied June 22, 1978.