[Civ. No. 51168. First Dist., Div. One. Mar. 22, 1983.]

MARTIN J. JARVIS, Plaintiff and Appellant, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Defendant and Respondent;
STATE COMPENSATION INSURANCE FUND, Intervener and Appellant.

248

250

**Counsel**

Leo M. O'Connor and Hugh B. Miller for Plaintiff and Appellant.

Walter G. Watson, Richard A. Krimen, George S. Bjornsen and Phillip J. Klein for Intervener and Appellant.

John J. Corrigan for Defendant and Respondent.

## Opinion

**RACANELLI, P. J.**—As a result of a serious permanent injury sustained in the course of his professional employment, appellant Martin Jarvis, an attorney, brought suit for damages against Southern Pacific Transportation Company (S.P.). The State Compensation Insurance Fund (Fund), compensation carrier for appellant's employer, appeared as plaintiff-in-intervention seeking reimbursement of workers' compensation benefits paid to Jarvis.

The jury returned special verdicts finding S.P. negligent, fixing damages in the amount of $550,000 and apportioning liability on the basis of 78 percent contributory negligence attributable to Jarvis and 22 percent attributable to S.P. The trial court entered a judgment awarding Jarvis the sum of $68,577 and nothing to intervener. Both Jarvis and intervener appeal.[1]

### Facts

We first narrate the factual record: Appellant Jarvis, a licensed attorney since 1947, is an employee and president of the law firm of Jarvis, Miller, Brodsky & Baskin, Inc., a professional corporation specializing in maritime and admiralty law and personal injury litigation.

In 1973, Jarvis was retained to represent Peter Chaplin in a personal injury suit against S.P. and Atchison, Topeka & Santa Fe Railroad Company (Santa Fe) for injuries sustained when Chaplin, a teamster employed by Alltrans Express, fell from a Santa Fe boxcar which had been positioned by S.P. in front of the Alltrans warehouse.

A material issue in the Chaplin lawsuit was whether the hand brake on the boxcar (No. 17627) was defective. Jarvis directed an interrogatory to Santa Fe seeking the location of boxcar No. 17627 for the purpose of investigation. Eventually, on December 10, 1974, Santa Fe's counsel informed Jarvis' office that the boxcar was in Barstow, California. Two days later, counsel telephoned Jarvis and told him the boxcar would not remain in Barstow but that he would be notified when the boxcar arrived in the northern California area.

At the time the Chaplin trial began on February 3, 1975, Jarvis had yet to inspect the boxcar which was then located—unknown to Jarvis—in S.P.'s San Francisco yard.

---

[1]Jarvis also appeals from the order denying his motion for new trial. This order is, of course, nonappealable (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 71, p. 4084). Intervener also appeals from the orders denying its motion to impress a lien on the judgment and its motion to tax costs and to strike the order to tax costs.

On the fifth day of trial, during direct examination of a S.P. witness, the presence of the boxcar in San Francisco was disclosed; the trial recessed for the weekend before cross-examination of the witness.

The following Sunday afternoon, Jarvis drove to S.P.'s Mission Bay railroad yard accompanied by Leo J. Corsello, a private investigator, and Lester Tarnapol, an engineering expert. Corsello and Tarnopol had gone to the yard earlier that day and inspected a Santa Fe boxcar equipped with a similar handbrake. The boxcar inspected was in fact No. 17627.

The yard was open and unfenced with public streets running through it. Jarvis observed neither any posted warnings, yard personnel, nor any signs of activity. Boxcar No. 17627 was standing alone on track 154.

After Tarnopol and Corsello had performed some tests on the handbrake, the three men left; however, they immediately returned to the stationary boxcar so that Tarnopol could perform one more test. The yard still appeared deserted. The three men had been seen by some railroad workers who thought that the Jarvis party were switchmen checking the brake on the boxcar.

At about 3:45 p.m., a S.P. switch engine crew had begun routine switching operations, which included switching a loaded Burlington Northern granite-filled open top car onto track 154 where No. 17627 was positioned. The railroad yard is gravitational, sloping downward gradually. A bullswitch located near 16th Street, approximately a quarter of a mile from No. 17627, controls entry onto the tracks including track 154.

The switch crew positioned the Burlington car and then pulled the connecting pin thus permitting the car to roll free down track 154;[2] no whistle or horn was sounded. As the Burlington car rolled down track 154, Corsello was standing on the ladder of the boxcar and Tarnopol alongside; Jarvis apparently was standing outside of the tracks. The granite car collided with No. 17627 and propelled the boxcar down the track. The overhang from the boxcar struck Jarvis' shoulder and knocked him to the ground, his legs on the track. Jarvis rolled in an attempt to escape injury but unfortunately was unable to remove his left leg which was traumatically amputated by the moving cars.

The switching of the granite car was the ninth switching operation performed that afternoon. As the switch engine passed 16th Street, the gates went down

---

[2]Releasing boxcars blindly is a long established practice for which the yard was specifically designed. However, one expert testified that S.P. safety rules required more precautionary conduct, and that a better method would have entailed positioning the boxcar while attached to the switch engine or assigning a crewman to the brake platform to control the boxcar with the handbrake.

and the warning bells sounded, yet the three men testified they heard no sounds: neither a whistle, a horn, engine noise or the squealing of the wheels on the tracks.

At the time of the accident, Jarvis was wearing a red zippered jacket; Corsello was wearing blue corduroy pants and a green jacket; Tarnopol was wearing overalls. The first accident reports requesting emergency aid described the victim as an injured "worker." A fireman who responded recalled that Jarvis stated he had fallen off the boxcar and slipped under the train as he tried to get up.

## I

Jarvis' initial claim of instructional errors focuses attention on his status as a trespasser in the Mission Bay yards. In its benchmark decision abrogating common law classifications of status in determining the liability of a landowner, the Supreme Court recognized that "the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability . . . ." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; accord *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 544 [134 Cal.Rptr. 29].)

In *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1970) 4 Cal.App.3d 129 [84 Cal.Rptr. 449] [14-year-old boy sustained double amputation while attempting to hop a freight train], the court likewise recognized that while the minor's status as a trespasser did not preclude all recovery, the *fact* of the trespass "furnishes some evidence that plaintiff's conduct was negligent." (4 Cal.App.3d at p. 140.)

In the present case, we have already had occasion to consider evidence pertaining to Jarvis' status as a trespasser as relevant to the issue of fault. In granting mandamus relief in connection with an *in limine* evidentiary ruling, this court held that evidence of Jarvis' status (as a trespasser, licensee or invitee) "was directly related and material to the issue of foreseeability. . . . [T]he effect of [Jarvis'] failure to expressly request permission to enter for purposes of inspection or to institute formal discovery to achieve such purpose, was for the jury to determine." (*Jarvis* v. *Superior Court,* 1 Civ. 45975, unpub. opn. filed June 21, 1979.) The trial court quite properly treated that opinion as establishing the law of the case.

The trial court correctly instructed the jury pursuant to BAJI No. 8.00 (1977 rev.) on the duty of care of an owner of premises and submitted its modified instruction defining a trespasser, licensee and business invitee together with the factors to be considered on determining whether Jarvis had been invited onto the property. ■ Jarvis does not dispute the propriety of those instructions

but contends the trial court should have also given his requested instruction that a trespasser may recover if the injury was foreseeable and avoidable.[3]

First, we believe the trial court properly determined that the precise issue was adequately covered by the standard BAJI instruction No. 8.00 given to the jury. Accordingly, it was under no duty to give a requested instruction which was otherwise adequately and correctly covered. (*Foster* v. *Gillette Co.* (1979) 100 Cal.App.3d 569, 576 [161 Cal.Rptr. 134]; *Rangel* v. *Graybar Electric Co.* (1977) 70 Cal.App.3d 943, 947 [139 Cal.Rptr. 191]; *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 944 [125 Cal.Rptr. 586].)

Moreover, we perceive no harm in the denial. The jury found in Jarvis' favor and awarded damages caused by S.P.'s negligence. It is thus apparent that the jury was not misled into believing recovery was precluded due to Jarvis' alleged status as a trespasser.

In a related argument, Jarvis contends that the trial court erred in failing to instruct that there was no evidence of contributory negligence as a matter of law.[4]

It is axiomatic that the issue of contributory negligence must be presented to the jury whenever it is asserted as a defense and there is " 'some evidence of a substantial character' " to support it. (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 548 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158]; *Scott* v. *Alpha Beta Co.* (1980) 104 Cal.App.3d 305, 310-311 [163 Cal.Rptr. 544].)

Jarvis argues that other than his presence in the Mission Bay yard, there was no evidence of negligence on his part. He is mistaken. As discussed above, his status as a trespasser was relevant to the issue of contributory negligence. (Cf. *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co., supra,* 4 Cal.App.3d 129, 139-140, where the court held that the minor's contributory negligence in hopping aboard a train was a question of fact to be resolved upon consideration of "his age, intelligence, and familiarity with the dangers inherent in moving trains.") Jarvis, an experienced personal injury lawyer, admitted he was aware of the dangers in a railroad yard. He went to the yard dressed like a worker and made no attempt to notify S.P. personnel—whether attorneys, yardmasters, or switchmen—of his presence at the track. For some

---

[3]The proposed instruction read: "A trespasser is entitled to an award of damages for injury under these instructions, if an owner or occupier of land would have foreseen that the action or inaction of the owner or occupier would cause injury and such action or inaction reasonably could have been avoided and was not."

[4]The jury was instructed on contributory and comparative negligence and given a special verdict form on that issue.

inexplicable reason, he apparently was not alert to the sounds or vibrations of the oncoming Burlington car. On the record before us, we think a factual question of contributory negligence was sufficiently presented for the jury to determine.

## II

■ Jarvis also claims error in the trial court's failure to instruct *sua sponte* on the issue of contributory negligence on the part of his companions, Corsello and Tarnopol. Again, the claim is meritless.

■ " '[I]n a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion.' " (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 950-951 [160 Cal.Rptr. 141, 603 P.2d 58].) The duty to instruct *sua sponte* extends only to controlling legal principles on material issues. (*Ibid.*) ■ Here, at no time did Jarvis claim contributory fault on the part of his companions. Counsel's opening statement characterized all three men as "reasonably prudent" and "reasonably intelligent." In closing argument counsel declared that the three men were "not guilty of negligence [and] were not negligent." No jury instructions were requested on the issue; nor was a special jury finding requested. In such circumstances, we conclude that Jarvis waived any right to complain of the lack of instructions on the belated issue. (See, e.g., *Olson* v. *Arnett* (1980) 113 Cal.App.3d 59, 66 [169 Cal.Rptr. 629]; *Downing* v. *Barrett Mobile Home Transport, Inc.* (1974) 38 Cal.App.3d 519, 523 [113 Cal.Rptr. 277].)

## III

■ Jarvis next asserts that he should have been allowed to amend his complaint (following earlier unsuccessful attempts to amend) to allege wilful misconduct by S.P. on the basis of violations of its own safety rules. We find no prejudice resulting from the court's ruling denying the motion.

Wilful misconduct has long been recognized as a separate category of negligence. (See, e.g., *Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863, 869-870 [118 P.2d 465]; see also 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 504, pp. 2770-2771.) Thus, a defendant whose negligence was wilful could not assert the defense of contributory negligence as an absolute bar against a negligent plaintiff's recovery. (*Williams* v. *Carr* (1968) 68 Cal.2d 579, 583 [68 Cal.Rptr. 305, 440 P.2d 505].) Following rejection of the absolute bar of contributory negligence in favor of the rule of comparative negligence under *Li* v. *Yellow Cab* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], the courts consistently have found no viable

distinction between such separate category of negligence described as wilful misconduct; in both instances the doctrine of comparative negligence applies. (*Zavala* v. *Regents of University of California* (1981) 125 Cal.App.3d 646, 651 [178 Cal.Rptr. 185]; *Southern Pac. Transportation Co.* v. *State of California* (1981) 115 Cal.App.3d 116, 121 [171 Cal.Rptr. 187]; *Sorensen* v. *Allred* (1980) 112 Cal.App.3d 717, 725-726 [169 Cal.Rptr. 441, 10 A.L.R.4th 937].)

Jarvis' action was tried on the theory of negligence, and the doctrine of comparative negligence was correctly applied. The jury was adequately instructed that it could consider the safety rule violations in determining the negligence issues. Accordingly, no harm was suffered by Jarvis on account of his inability to proceed on the superfluous theory of wilful misconduct.[5]

### IV

■ During trial, one of the jurors was seen in conversation with witness McNear, the president of S.P. The trial judge questioned the juror in the presence of counsel,[6] but permitted no questioning by counsel. The court concluded the incident was harmless and denied Jarvis' motion to recuse the juror. He assigns the court's action as reversible error. We cannot agree.

A mere communication between a witness and a juror in a civil case is not a ground for reversal unless the juror was influenced by such communication to the prejudice of one of the parties. (*City of Pleasant Hill* v. *First Baptist Church* (1969) 1 Cal.App.3d 384, 426-428 [82 Cal.Rptr. 1]; accord *City of Los Angeles* v. *Lowensohn* (1976) 54 Cal.App.3d 625, 637 [127 Cal.Rptr. 417].) Here, there was no showing of prejudice. The witness and the juror had no prior relationship. Their spontaneous conversation was brief and no more than a casual exchange unrelated to the lawsuit. There was no abuse of discretion in refusing to recuse the juror.

### V

■ Both Jarvis and appellant-intervener Fund argue that the trial court committed prejudicial error in ruling that Jarvis' contributory negligence was imputed to the employer law firm thus defeating the Fund's subrogation claim for compensation benefits paid to Jarvis. Relying on the recent decision of

---

[5]Assuming, arguendo, that a theory of wilful misconduct remained tenable, we cannot say that the trial court abused its discretion as a matter of law in denying both the untimely request to amend and to conform to add the new theories. (See generally *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 667, fn. 2 [134 Cal.Rptr. 815, 557 P.2d 106].)

[6]The court's inquiry revealed that the juror had yawned and McNear laughingly remarked, "Yes, I know how you feel." The juror replied "I have been sitting inactive too long"—or words to that effect. The juror believed she was not influenced in any way.

*Kemerer* v. *Challenge Milk Co.* (1980) 105 Cal.App.3d 334 [164 Cal.Rptr. 397], appellants argue that the challenged ruling unjustly sanctions a double recovery by the third party tortfeasor and simultaneously impairs their respective rights to credit against the recovery for past and future compensation awards as provided under Labor Code section 3861. The arguments are persuasive.

As noted earlier, the jury fixed damages in the sum of $550,000 and apportioned fault under the comparative negligence principles. The jury found that 78 percent was attributable to Jarvis and 22 percent to S.P. The court determined as a matter of law that there was no negligence on the part of Jarvis' employer except to the extent of employee-Jarvis' own negligence. The trial court thereafter entered judgment in favor of Jarvis in the amount of $68,577.47 and awarded the Fund nothing.[7] Thereafter, Jarvis' motion for a new trial limited to the issue of apportionment of damages and the Fund's motion to impress a lien were denied.

Relying essentially on a claim of invited error (relating to the revised form of special verdict used over initial objection) and a theory of active liability on the part of the employer law firm as a result of Jarvis' managerial function, S.P. argues that the Fund's right to reimbursement is precluded under *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], as explicated by case law with the advent of the doctrine of comparative fault. (See generally *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 840 [150 Cal.Rptr. 888, 587 P.2d 684]; *Arbaugh* v. *Proctor & Gamble Mfg. Co.* (1978) 80 Cal.App.3d 500, 508-509 [145 Cal. Rptr. 608].) The former claim is unsupported by the record; and the latter contention is inconsistent with basic policy considerations which underlie comparative fault principles.

In *Li* v. *Yellow Cab, supra,* 13 Cal.3d 804, the "all-or-nothing" rule of contributory negligence was abrogated in favor of the rule of comparative fault which markedly affected the rules of recovery in third party suits.

An employer is no longer precluded from reimbursement of its payments due to its own negligence. (See *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] [concurrent tortfeasors entitled to partial indemnity in proportion to their comparative fault].) Thereafter, the courts have fashioned the rule that where the employer was concurrently negligent, his recovery for workers' compensation

---

[7]From S.P.'s proportionate share of the damages (22 percent of $550,000=$121,000), the trial court deducted $52,422.53 representing the compensation benefits received by Jarvis. Having imputed Jarvis' negligence to the otherwise nonnegligent employer, it accordingly denied any recovery to the intervening insurer. The trial court also awarded defendant S.P. its costs against intervener, reasoning that defendant was the prevailing party.

benefits will be limited to the excess of those benefits after deducting the employer's proportionate share of the employee's damages. (*Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.*, *supra*, 22 Cal.3d 829; *Arbaugh* v. *Procter & Gamble Co.*, *supra*, 80 Cal.App.3d 500.)

■ But while the negligent employee's recovery will be reduced in proportion to his own degree of fault (*Li* v. *Yellow Cab*, *supra*, 13 Cal.3d 804; see *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 512 [156 Cal.Rptr. 41, 595 P.2d 619]), the employee's award must, of course, also be reduced by the amount of the workers' compensation benefits received in order to prevent a double recovery. (See *Finney* v. *Manpower, Inc.* (1981) 123 Cal.App.3d 1066, 1069-1071 [177 Cal.Rptr. 74]; *Kemerer* v. *Challenge Milk Co.*, *supra*, 105 Cal.App.3d 334, 336-337, fn. 1.) The employee's negligence will not, however, be imputed to an otherwise nonnegligent employer for the purpose of reducing the amount of the *employer's* reimbursement.[8] (*Kemerer* v. *Challenge Milk Co.*, *supra*, 105 Cal.App.3d at pp. 334-336.) We find the reasoning in *Kemerer* persuasive herein: "Defendant's contention is untenable because by imputing plaintiff-employee's negligence to her employer, the damages assessed against the third party tortfeasor would be reduced *twice* contrary to the principle of comparative fault. Defendants would first reduce the total award by plaintiff-employee's comparative fault. Secondly, by using the employee's negligence imputed to her employer, they would reduce the amount of recovery by plaintiffs-in-intervention.

"To illustrate defendants' argument, we will assume the following: A jury awards $40,000 to an injured plaintiff-employee who had previously received $10,000 in compensation benefits. The plaintiff-employee is found to be 30 percent negligent, the employer 0 percent negligent and the third party tortfeasor 70 percent negligent. Following defendants' theory, the *first* reduction for plaintiff's comparative fault is 30 percent of $40,000, or $12,000 which would be deducted from the verdict. The *second* reduction is 30 percent of $10,000, or $3,000 which would be deducted from the compensation benefits reimbursed to the employee or to its insurance carrier. The plaintiff would receive $40,000 less $12,000, or $28,000 minus benefits of $10,000 for a net recovery of $18,000. The plaintiff-in-intervention would receive $10,000 less $3,000 or $7,000. Defendant would thus pay a total of $25,000.

"The foregoing mathematically reflects the fallacy of defendants' argument. The objective of *Li* v. *Yellow Cab Co.*, *supra*, 13 Cal.3d 804, 813, is a 'system under which liability for damage will be borne . . . in direct proportion to . . .

---

[8]We reject S.P.'s argument that the professional law firm should not be recognized as an employer for purposes of reimbursement. It is undisputed that Jarvis was an employee of the firm acting within the course and scope of his employment at the time of the events in question. Contrary to S.P.'s contention, the doctrine of respondeat superior applies regardless of the status or level of employment of the injured worker.

respective fault.' Defendants' determined proportional share of responsibility is 70 percent. The total damages which it should pay is $28,000, i.e., 70 percent of $40,000. In the hypothetical case, plaintiff should receive $18,000 and plaintiff-in-intervention $10,000, for a total of $28,000, the sum equivalent to the proportionate share of defendant's liability. [Fn. omitted.]" (*Id.*, at pp. 338-339; see also *Aceves* v. *Regal Pale Brewing Co.*, *supra*, 24 Cal.3d 502, 512.)

By parity of reasoning, the proper allocation of damages is determined as follows:

1. Plaintiff Jarvis' Recovery:

| | |
|---|---|
| $550,000 | (Total award of damages) |
| − 429,000 | (78 percent attributable to plaintiff) |
| $121,000 | |
| − 52,423 | (Total compensation benefits received) |
| $ 68,577 | (Net recovery) |

2. Intervener Fund's Recovery:

| | |
|---|---|
| $ 52,423 | (Total benefits paid) |
| − 0 | (Employer's own negligence) |
| $ 52,423 | (Net recovery) |

3. Cost to Defendant S.P.:

| | |
|---|---|
| $ 68,577 | (Plaintiff's net recovery) |
| + 52,423 | (Intervener's net recovery) |
| $121,000 | (Total cost (equal to 22 percent attributable to defendant)) |

The judgment is reversed in part and the matter is remanded with directions to enter a new and different judgment allocating damages consistent with the views herein; further, that costs and disbursements of S.P. be disallowed as against the Fund. In all other respects, the judgment is affirmed. S.P. and the Fund shall recover their respective costs on appeal.

Newsom, J., and Holmdahl, J., concurred.