Xavier SOTO, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CV 86–2509 AWT.

United States District Court, C.D. California.

Aug. 24, 1990.

**728**

Ian Herzog, In Association With Law Offices of Wayne McClean, Santa Monica, Cal., for plaintiff.

Lourdes G. Baird, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civ. Div., William B. Spivak, Jr., Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM DECISION

TASHIMA, District Judge.

This is an action arising under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) & 2671 *et seq.*, and was tried to the court on liability only. This Memorandum Decision constitutes the court's findings of facts and conclusions of law under F.R.Civ.P. 52(a) on those issues.

### FACTS

On August 13, 1983, plaintiff, together with a number of his family members and friends went to the Angeles National Forest for a day outing.[1] They went to the Big Tujunga Canyon area of the national forest, which is a part of the Tujunga Ranger District (the District or the District Ranger). More specifically, plaintiff's party went to the Stoneyvale Picnic Ground area of Tujunga Canyon. There, they went swimming, first in an area referred to at the trial as the La Paloma pool, then to the Stoneyvale pool.[2]

Plaintiff and at least some of his companions both swam and dove at both pools. At the Stoneyvale pool, plaintiff "tested" the water and judged it to be of sufficient depth for diving. He dove into the pool twice from a rock ledge. On the second dive his head hit the bottom of the pool. That accident caused plaintiff to become an incomplete quadriplegic.[3]

The Forest Service has classified both pool areas as "dispersed" or undeveloped sites. This nomenclature means, in Forest Service usage, that the site is left in its natural or wild state, essentially unimproved and unsigned. The Forest Service, however, cannot mask reality with words.

The fact is that this area of the Angeles National Forest is *adjacent to* one of the largest metropolitan areas of the country. And by no means is the La Paloma/Stoneyvale area unimproved. In close proximity, *i.e.*, within comfortable walking distance, to these two pools are: a large parking lot; an improved picnic area; Forest Service housing; and a "subdivision." The latter is a tract of private homes on Angeles National Forest grounds, directly adjacent to the Stoneyvale pool, built by Forest Service permitees or licensees. Also close by is the Vogel Flats Campground, improved, where, for a fee, overnight camping is permitted.

Because of its proximity to the greater Los Angeles metropolitan area, in 1983, the La Paloma/Stoneyvale area, like other fringe areas of the forest which bordered on Los Angeles, had literally hundreds of day visitors every summer weekend. Usage was so intense that the Stoneyvale parking lot, which had a capacity in excess of 70–100, overflowed. Visitors parked in no parking areas along and off the road

---

**1.** National forests are, of course, under the jurisdiction of the United States Forest Service, Department of Agriculture (Forest Service).

**2.** The first pool was so-named because it was directly beneath the La Paloma bridge. The second pool was referred to at the trial as the "accident pool." It is referred to here as the Stoneyvale pool, simply because it was adjacent to the Stoneyvale parking lot.

**3.** As stated, only liability was tried in this first phase. The term "incomplete quadriplegic" is the description of plaintiff's injury used by his attorney. From the court's observation of plaintiff at trial, the court has no reason to doubt the accuracy of this description. However, this is not a finding of plaintiff's condition, then or now.

and even on the La Paloma bridge. On summer weekends, both Forest Service enforcement personnel and Los Angeles County deputy sheriffs were kept busy ticketing illegally parked vehicles and persons using open barbecues in non-designated areas. The trash cans overflowed. Usage was so intense that "subdivision" residents complained time and again to the Forest Service about the crowds and asked consideration of either closing the area to the public or limiting the number of persons allowed access. District personnel patrolled this area regularly and had regular contact with "subdivision" residents and were fully aware of this intense usage.

Theoretically, the La Paloma and Stoneyvale pools were not open to swimming or diving, a position defendant stubbornly clung to at trial.[4] In fact, however, both pools were constantly used by hundreds of swimmers throughout the summer. Indeed, the presence of a body of water undoubtedly was an important consideration in attracting such intensive usage of this area. There was absolutely no effort made to enforce any swimming or diving ban; there was not even one sign indicating that such activity was prohibited. Although citations were freely handed out for other violations of Forest Service regulations, none was given for prohibited swimming or diving. All of this activity was well known to the District. A ranger handing out a parking citation on the La Paloma bridge could not help but see the swimming and diving activity going on around him or her. The same is true for a ranger giving a citation for barbecuing on the beach at the Stoneyvale pool. In fact, a District employee suggested posting a warning sign at one of the pools because of the danger of diving. His suggestion was ignored.

By default, the La Paloma/Stoneyvale pool area became a *de facto* "developed" site and should have been recognized and treated as such by the District Ranger. At minimum, warning signs against diving

into the pools should have been posted, or the no swimming/diving ban should have been enforced.

ISSUES

■ It is the familiar rule in FTCA cases that the government is liable to the same extent as a private individual would be in like circumstances under local law, here the law of California. 28 U.S.C. § 2674; *Richards v. United States*, 369 U.S. 1, 9–12, 82 S.Ct. 585, 590–92, 7 L.Ed.2d 492 (1962).

Plaintiff contends that the Forest Service was negligent in failing to warn of the dangerous condition created by the appearance of the Stoneyvale pool as a safe place for swimming and diving, especially when hundreds of persons were permitted by the Forest Service to engage in this activity at the La Paloma/Stoneyvale pools. He also contends that the Forest Service's actions and inactions amount to willful and malicious misconduct.

Besides claiming no breach of duty, defendant claims the benefit of the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a), and the owner's immunity under the California recreational use statute, Cal.Civ.Code § 846. Thus, the dispositive issues come down to these: (1) Do the acts and/or omissions of the District Ranger which otherwise would give rise to liability come within the discretionary function exception? (2) Is defendant immune from liability under the California recreational use statute? (3) If defendant is liable, does the principle of comparative fault apply?

DISCUSSION

I. *Discretionary Function Exception*

The FTCA provides that it (tort liability) does not apply to:

> Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

---

**4.** Defendant's expert did concede that water play was appropriate at these pools (which he insisted be called "ponds"). However, he defined "water play" as including only wading and not swimming and diving. How the District

could enforce such a distinction—permitting wading but prohibiting swimming—was not explained. The concept, as a viable recreation policy in a mountain pool, defies common sense.

28 U.S.C. § 2680(a). Defendant argues that given the millions of acres of national forests and the limited availability of personnel, it was a discretionary policy decision to limit inspection of lands under its jurisdiction to so-called "developed" sites or areas. It further contends that under the Forest Service Manual, the La Paloma/Stoneyvale pool area was not, and the District Ranger did not consider that area to be, a developed area. It was a "dispersed" area.

■ The court does not disagree that, at the policy level, the decision to classify national forest lands into these two types of areas is a discretionary function, as is the decision that limited personnel available for safety inspection should be allocated to developed areas. However, the misclassification of a given site by the District Ranger is not such a policy decision. What the court finds, as explained above, is that the La Paloma/Stoneyvale area is a *de facto* developed area, regardless of its paper classification. The District Ranger permitted it to become such over an extended period of time. In effect, the District disregarded all of the Forest Service rules that apply to dispersed areas. No effort was made to enforce the prohibition against swimming. No access control was enforced. Further, to state, as defendant does, that the parking lot, immediately adjacent to the Stoneyvale pool, and the picnic area were "developed", but that the pool was not, is an artificial distinction completely out of touch with reality. The failure, *at minimum,* to warn of the danger of diving into a mountain pool, was not the exercise of a discretionary function. At this level and in these circumstances, the court finds that the discretionary function exception does not apply. *See, e.g., Summers v. United States,* 894 F.2d 325 (9th Cir.1990), *amended,* 905 F.2d 1212 (9th Cir. 1990).

**5.** The statute contains two other exceptions. It does not apply if "consideration" is paid or if the person is "expressly invited rather than merely permitted" upon the premises. Cal.Civ. Code § 846. Plaintiff contends that he comes

## II. *Recreational Use Immunity*

■ The California recreational use statute, Cal.Civ.Code § 846, provides that the owner of land used for a "recreational purpose" is not, liable to a permittee-user for personal injury. The parties agree that plaintiff's use was for a recreational purpose. The statute contains several exceptions to its grant of immunity, only one of which is pertinent here.[5] Section 846 "does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use structure or activity. . . ."

This statute has been construed a number of times by this Circuit, as well as by California's appellate courts. Under these cases, the court finds that plaintiff has established that the District Ranger's failure to warn and failure to guard were willful.

In *Spires v. United States,* 805 F.2d 832 (9th Cir.1986), the court held that three elements must be proven before a landowner's conduct amounts to willful misconduct: "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril." *Id.* at 834, *quoting Morgan v. Southern Pac. Transp. Co.,* 37 Cal.App.3d 1006, 1012, 112 Cal. Rptr. 695 (1974). These same elements are also listed with approval in *Rost v. United States,* 803 F.2d 448, 451 (9th Cir.1986).

Here, there was actual knowledge that a peril existed. Just two and a half months before this accident there was a drowning accident at the La Paloma/Stoneyvale pools. Forest Service personnel assisted in recovery of the body. Many times, District personnel observed diving at these pools and were of the opinion that it was "stupid." As stated earlier, one recreational worker even suggested a warning sign. Even if actual knowledge of the peril were

within both of these exceptions. While the court doubts the validity of these claims, because of the disposition made above, it is unnecessary to address them.

absent, there certainly was constructive knowledge both of the peril and that injury was a probable, as opposed to a possible, consequence of any danger. This area was heavily used; to say it was overused, without regulation, is no exaggeration. It attracted literally hundreds of swimmers and divers every summer weekend. This heavy, intensive use gave rise at least to the constructive knowledge that serious injury from this activity was *highly* probable. *Compare Rost, id.* at 454 (Kozinski, J., dissenting), and *Baines v. Western R.R.*, 56 Cal.App.3d 902, 128 Cal.Rptr. 778 (1976), cited by Judge Kozinski, both of which suggest that an extremely low usage is highly probative of no knowledge of probability of injury.

Was the third element present, a conscious failure to act to avoid peril? The evidence compels an affirmative answer to this question. To say that the District Ranger's failure to act was in callous disregard of the safety of the national forest-using public is to put it charitably. The evidence strongly suggests that the District Ranger treated the using public with contempt.[6] There appears to have been no systematic procedure even for the reporting of accidents. The testimony was that reports were made only if a tort claim was made or one was expected. In fact, no Forest Service report was made of this serious accident until months later. None of the District personnel was properly trained in safety and there was no training program; no one would acknowledge that he or she had *any* responsibility for the safety of the using public. District personnel were constantly in the area. They vigorously enforced parking and fire regulations. They did not enforce or guard against the no swimming/diving regulation.

The Angeles National Forest is unlike the Tongass National Forest or other remote, wilderness areas. At least its closer, urban fringes are more akin to city parks than to non-urban "forests." Apparently, at least in the Tujunga Ranger District, the Forest Service refuses to recognize this inescapable fact of life. Until it does, it rightly is held responsible for its conscious failure to act to protect the forest-using public at the most basic operational level.

The court finds in this case that the Forest Service's failure to warn of the dangerous condition and its failure to guard against the dangerous activity was the result of willful misconduct by it; further, that plaintiff's injury was proximately caused by defendant's willful misconduct.

### III.  *Contributory Negligence*

■  In addition to denying liability, defendant has pleaded contributory or comparative negligence by plaintiff as a proximate cause of his injury. In the landmark case of *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), in which the doctrine of comparative fault was adopted, the California Supreme Court, although recognizing the issue, did not rule on whether or not the doctrine was applicable in cases of willful misconduct versus negligence. *Id.* at 825–26, 119 Cal. Rptr. 858, 532 P.2d 1226. Since *Li*, a number of intermediate California appellate courts have applied comparative fault in willful misconduct cases. *See, e.g., Jarvis v. Southern Pac. Transp. Co.*, 142 Cal. App.3d 246, 255–56, 191 Cal.Rptr. 29 (1983); *Sorensen v. Allred,* 112 Cal.App.3d 717, 725–26, 169 Cal.Rptr. 441 (1980). The Ninth Circuit has recognized that this application of the comparative fault rule represents the law of California as the state Supreme Court would hold. *Plyler v. Wheaton Van Lines*, 640 F.2d 1091 (9th Cir.1981) (Kennedy, J.).

District personnel testified that diving into the La Paloma and Stoneyvale pools was "stupid", because it was obviously dangerous. To a large extent these remarks reflect ordinary prudence, rather

---

6.  District personnel testified that they were reluctant to police and inspect certain areas, "to go down there," because they found it (mingling with the users) unpleasant. The District Ranger remarked that if signs were to be put up they would have to be in Spanish and "Asian". One of the "subdivision" residents testified more bluntly. In her opinion, the area was overrun with "80 percent Mexicans and 20 percent undesirable whites." This racial overtone is unfortunate and, undoubtedly, was a contributing factor in the Forest Service's failure to carry out its mission in this racially heterogenous metropolis.

than special expertise. Although plaintiff testified that he tested the depth of the water, this procedure was no more than a cursory walk through. Plaintiff could not see the bottom of the pool because of the murkiness of the water. It was negligent first to assume that a mountain pool would be of uniform depth and second to dive head first into a pool of unknown depth.

The Court finds that plaintiff's conduct was negligent and that his own negligence was a proximate cause of his injury. The Court further finds that 25 percent of the fault should be apportioned or attributed to plaintiff and 75 percent to defendant.

CONCLUSION

For the reasons set forth above, the court finds that defendant is liable to plaintiff under the FTCA for 75 percent of the damages resulting from the injuries he suffered in the Angeles National Forest on August 13, 1983.