[S.F. No. 24594. July 5, 1984.]

ARTHUR RODGERS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
TRANSCON LINES, INC., et al., Respondents.

**COUNSEL**

Harry F. Wartnick and Cartwright, Sucherman, Slobodin & Fowler for Petitioner.

Goshkin, Pollatsek, Meredith & Lee, Samuel E. Meredith, Vivian L. Schneider, Mullen & Filippi and John A. Thompson for Respondents.

Clifford D. Sweet III, Heggeness & Sweet, Michael A. Mathews, Mathews & McClain and C. Gordon Taylor as Amici Curiae on behalf of Respondents.

## OPINION

KAUS, J.—In this workers' compensation matter, petitioner Arthur Rodgers, the employee, contends that the Workers' Compensation Appeals Board (WCAB) used the wrong formula in determining the credit against future workers' compensation payments to which his employer is entitled under Labor Code section 3861[1] as interpreted in *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684]. As we explain, the WCAB's approach is totally faithful to the rationale of *Associated Construction* and, in addition, is consistent with a line of post-*Associated Construction* decisions which have addressed a very similar question in the context of an employer's right to reimbursement for compensation benefits that have already been paid. Accordingly, we conclude that the WCAB decision should be upheld.

I

On March 4, 1974, Rodgers, a truck driver employed by Transcon Lines, Inc. (Transcon), was injured when he fell from a loading dock owned and operated by Melvin Sosnick Company (Sosnick). Shortly thereafter, Rodgers applied for workers' compensation benefits from Transcon and filed a civil action against Sosnick. After furnishing Rodgers with temporary disability benefits, Transcon intervened in the civil action, seeking reimbursement from Sosnick for the benefits it had provided to Rodgers. Rodgers' workers' compensation proceeding against Transcon was held in abeyance pending the outcome of the civil action.

At the trial in the civil action, the jury found that Rodgers had sustained total damages of $25,500 as a result of his injury, and that Sosnick, Rodgers and Transcon were all partially responsible for the injury, with Sosnick bearing 70 percent of the fault, Rodgers 25 percent and Transcon 5 percent.

---

[1]Section 3861 provides in relevant part: "The [WCAB] . . . shall allow, as a credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury . . . as has not theretofore been applied to the payment of expenses or attorneys' fees, . . . or has not been applied to reimburse the employer."

Unless otherwise specified, all section references are to the Labor Code.

From the gross amount of Rodgers' recovery from Sosnick,[2] the trial court deducted the amounts attributable to attorneys' fees and to the other expenses designated in section 3861, the statutory credit provision at issue here (see fn. 1, *ante*), and certified that Rodgers' "net recovery" in the civil action amounted to $7,734.28. The parties apparently agree that this is the appropriate net recovery figure for purposes of section 3861.

After the civil action was concluded, the proceedings in the related workers' compensation matter went forward. The parties stipulated that Transcon had fully paid all temporary disability benefits that were due, and that Rodgers had sustained a permanent disability of 20¼ percent, entitling him to permanent disability benefits of $5,022.50. The only issue on which the parties could not agree was how the employer's section 3861 credit was to be applied in this setting.

The parties recognized that our decision in *Associated Construction* sets forth the general, controlling principles in this area. In that decision we held that when an employer which is partially at fault for its employee's injury seeks to invoke the credit of section 3861, the WCAB should "deny the employer credit until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault. Once the employer's workers' compensation contribution reaches this level, he should be granted a credit for the full amount available under section 3861." (22 Cal.3d at p. 843.)

Under this formulation, both parties acknowledged that Transcon was entitled to the full statutory credit—$7,734.28—once it had paid Rodgers some threshold amount in compensation benefits. The parties disagreed, however, on how that threshold should be computed. Transcon maintained that it should become eligible for the statutory credit once it had paid benefits equal to its *own* proportional share of the employee's total civil damages—i.e., 5 percent of $25,500 or $1,275. Rodgers, by contrast, took the

---

[2]Although the record indicates that Rodgers obtained a total judgment of $15,589.20 against Sosnick, and that Transcon obtained a judgment of $3,300.08 against Sosnick, it does not clearly reveal how these figures were arrived at. There is some suggestion, however, that the trial court, in computing these amounts, may well have relied on a BAJI formulation that was later disapproved in our *Associated Construction* decision. (See 22 Cal.3d at p. 847, fn. 12.)

Even if the underlying civil judgment was in some respects erroneous, however, the error would not affect this proceeding, since neither party has challenged the validity of that judgment here. Furthermore, although it is not clear whether Transcon obtained reimbursement for all of the compensation benefits which it furnished Rodgers before the civil judgment was entered, Transcon has not contended that any of its past payments for which it has not obtained reimbursement should be taken into consideration in determining its right to a credit under section 3861. (Cf. *Associated Construction, supra,* 22 Cal.3d at p. 843, fn. 10.) Accordingly, we need not consider that issue here.

position that Transcon should not be able to invoke the credit until it had paid benefits equal to the proportion of the civil damages attributable to *both* the employer and the employee—in this case, 30 percent of $25,500 or $7,650.

The WCAB, finding no justification for imputing the negligence of the employee to the employer in this context, concluded that the threshold figure should be determined by reference to the employer's own degree of fault. ■ ■ ■ ■ Accordingly, it entered an order which provides that after Transcon pays Rodgers compensation benefits of $1,275, it will be entitled to a credit of $7,734.28.[3] Rodgers now challenges that order.

## II

The logical starting point of analysis, of course, is our decision in *Associated Construction*. In that case, we reviewed at some length the legislative and judicial background of employers' subrogation rights within California's workers' compensation system, and it is unnecessary to retrace that ground in detail here. For our purposes, a very brief synopsis will suffice.

Under the workers' compensation statutes, an employee who is injured in the course of his employment may recover compensation benefits from his employer without regard to the negligence of either party. (§ 3600.) Except in certain limited circumstances, the employee's compensation claim is his exclusive remedy *against his employer*. (§ 3601.) At the same time, the pertinent statutes provide that the availability of workers' compensation benefits does not preclude an injured employee from pursuing an ordinary civil action "against any person other than the employer"—e.g., a third party tortfeasor—who may be responsible for his injury. (§ 3852.) In addition, when a third party *is* liable for the employee's injuries, the controlling statutes grant the employer the right (1) to obtain reimbursement from the third party for workers' compensation benefits which the employer has already paid (§§ 3852, 3853, 3856, subd. (b)) and (2) to obtain a credit— based on its employee's recovery from the third party—against its future workers' compensation liability. (§ 3861.) It is, of course, this latter credit which is at issue in this case.

From their inception, the statutory provisions relating to reimbursement and credit have provided no explicit guidance on the question of whether

---

[3]Because Rodgers' permanent disability benefits amounted only to $5,022.50, it is, of course, clear that once Transcon pays $1,275, its statutory credit of $7,734.28 will be more than sufficient to relieve it of any further liability for the current permanent disability award. Nonetheless, the WCAB acted properly in setting forth the total amount of the credit and explaining its operative effect, since it is possible that additional benefits may be awarded to Rodgers in the future if new or further disability should arise as a result of the injury.

an employer's negligence affects its right to obtain such benefits. In *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641] and *Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884 [117 Cal.Rptr. 683, 528 P.2d 771], our court—drawing, in part, on the philosophy underlying the then-prevailing all-or-nothing contributory negligence doctrine—held that where the employer's negligence was a concurrent, proximate cause of the injury, the employer was totally barred from obtaining any such reimbursement or credit.

In *Associated Construction,* however, we faced the question whether the adoption of comparative negligence principles in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] and *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] had rendered the approach of *Witt* and *Roe* obsolete. We concluded that it had. "Applying the principle that the employer and third party should, to the extent consistent with the employer's statutory immunity from tort liability, share the burden of the employee's recovery as joint tortfeasors" (22 Cal.3d at p. 842), we concluded that a concurrently negligent employer should not be totally barred from obtaining reimbursement or credit but instead that it "should receive either credit or reimbursement for the amount by which [its] compensation liability exceeds [its] proportional share of the injured employee's recovery. [Citation.]" (*Ibid.*)

Having reached this general conclusion, we went on to discuss in some detail exactly how this principle should be applied in both the reimbursement and credit contexts. Because this passage of the opinion is particularly pertinent to this case, we quote it at some length.

We began with the reimbursement procedure: "When the issue of an employer's concurrent negligence arises in a judicial forum, application of comparative negligence principles is relatively straightforward. The third party tortfeasor should be allowed to plead the employer's negligence as a partial defense, in the manner of *Witt*. Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of *American Motorcycle*. The court should then deduct the employer's percentage share of the employee's total recovery from the third party's liability—up to the amount of the workers' compensation benefits assessed against the employer. Correspondingly, the employer should be denied any claim of reimbursement—or any lien under section 3856, subdivision (b)—to the extent that his contribution would then fall short of his percentage share of responsibility for the employee's total recovery." (Fn. omitted.) (*Ibid.*)

We then turned to the credit procedure: "When the issue of an employer's concurrent negligence arises in the context of his credit claim based on a third party settlement, the board must determine the appropriate contribution of the employer since the employee's recovery does not represent a judicial determination of tort damages. Specifically, the board must determine (1) the degree of fault of the employer, and (2) the total damages to which the employee is entitled.[4] *The board must then deny the employer credit until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault.* Once the employer's workers' compensation contribution reaches this level, he should be granted a credit for the full amount available under section 3861. Only when such level of contribution has been reached, however, will grant of the statutory credit adequately accommodate the principle that a negligent employer should not profit from his own wrong.[10]" (Italics added.) (*Id.* at p. 843.)

In the accompanying footnote 10, we illustrated the application of the credit procedure we had adopted through the following hypothetical: "Assume an employee receives $20,000 in workers' compensation benefits. He later sues a third party to recover for the same injury, which suit is settled without the consent of the employer. Out of the settlement, the employee actually receives, after the payment of 'expenses or attorneys' fees' within the meaning of section 3861, the sum of $25,000. The employee then seeks further benefits from the board, and his employer claims a credit in the amount of the $25,000 settlement recovery. Under the principles announced herein, the board would then determine the employer's degree of fault and the employee's total damages. Should the board find the employer free of negligence, of course, the employer would receive the benefit of the entire $25,000 settlement as a credit against future payments. Were the board, however, to determine that the employer was 50 percent negligent, and that the employee is entitled to $100,000 in damages, then the employer could not claim a credit until he contributed an additional $30,000 in benefits. The employer would then have contributed a total of $50,000 to the employee's recovery, or 50 percent of the employee's total damages of $100,000 and the ratio of his contribution to the employee's damages would correspond *to his degree of fault.*" (Italics added.) (*Id.* at p. 843, fn. 10.)

If the italicized language in the above quotations—referring to "*his* proportional share of fault" and "*his* degree of fault"—is taken at face value, it might appear that there is no issue left to be decided in this case at all and that *Associated Construction* in fact held that the threshold figure—after which the employer's statutory credit becomes effective—is to be deter-

---

[4]In this case, of course, the WCAB did not have to make these determinations because those questions had already been resolved by the jury in the civil action.

mined by the employer's own degree of fault. As Rodgers maintains, however, that language in *Associated Construction* cannot in itself fairly be viewed as definitively resolving the issue presented here. Unlike in this case, in *Associated Construction* the employee's injury had been caused solely by the concurrent negligence of his employer and the third party, and our opinion specifically noted that "[a]s no allegations of employee negligence appear on the face of this record, *we do not decide here how such negligence, if established, would affect the proportional contribution of the employer.*" (Italics added.) (22 Cal.3d at pp. 842-843, fn. 9.) In light of this express disclaimer, Rodgers is correct in maintaining that *Associated Construction* did not *decide* the issue presented here.

■ Nonetheless, the reasoning of *Associated Construction* clearly supports the WCAB's conclusion that the employee's negligence should not be imputed to the employer in this context. As the above passages demonstrate, our conclusion in *Associated Construction* that an employer should be denied the benefit of the statutory credit until it has paid compensation benefits equal to its proportional share of the employee's tort damages rested on the proposition that such a rule was necessary to "accommodate the principle that a negligent employer should not profit *from [its] own wrong*" (italics added) (*id.* at p. 843) and to further the objective "that the employer and third party should, to the extent consistent with the employer's statutory immunity from tort liability, *share the burden of the employee's recovery as joint tortfeasors.*" (*Id.* at p. 842.) Those principles would not be furthered by denying the employer its statutory credit until it has paid additional benefits equal to the proportion of tort damages *attributable to the employee's fault*; even if the employer were an ordinary tortfeasor, it would not be liable for *that* portion of the employee's tort damages.

Further evidence that *Associated Construction* supports the WCAB conclusion is found in the opinion's explanation for rejecting an alternative method of integrating comparative fault principles into the section 3861 credit determination, which had been proposed by the employer in that case. The employer had suggested that when an employer is concurrently negligent, the amount of the credit provided by section 3861 should simply be reduced by the percentage of the employer's fault; thus, for example, if the employee's net recovery for purposes of section 3861 was $100,000 and the employer was 50 percent at fault, the employer would be entitled to a $50,000 credit against future compensation liability. We rejected that approach—which we described as a "mechanistic application of *Li*"—explaining that under such a formulation "a negligent employer that had made an insignificant contribution would have its already deficient contribution further reduced—a result clearly at odds with the premise that an employer should not be able to profit from its own wrong.[11]" (*Id.* at pp. 843-844.)

The accompanying footnote 11—which we set out below[5]—makes it clear that what we had in mind in describing the employer's contribution as "deficient" was that the contribution did not equal the proportion of the tort damages for which the employer would have been liable under ordinary comparative negligence principles. Consequently, it is evident that the fundamental purpose of the "threshold" approach which we adopted in *Associated Construction* was simply to ensure that the employer did not obtain the benefits of the credit until it had paid compensation equal to its theoretical tort liability. The formula used by the WCAB in this case is true to that purpose.

Finally, one additional passage in *Associated Construction* confirms the validity of the WCAB's ruling. The employee in *Associated Construction* had argued that by providing a concurrently negligent employer with any credit whatsoever we would be permitting the employer to profit from its wrong. In response we explained: "Under the rule we announce . . . the employer does not so profit; no credit is available until the employer has fully satisfied its share of tort damages. Allowing the concurrently negligent employer a credit limited in this fashion is rational if nonnegligent employers are to be permitted credit; each profits, if at all, only to the extent that it committed no wrong. The resultant system effects a fair and equitable balance between the interest of the employee in receiving his full damages and the interest of the employer in recovering its subrogation interest. The employer does not profit from its wrong, nor does the employee enjoy a double recovery." (22 Cal.3d at p. 846.)

By equating the posture of a concurrently negligent employer who has paid compensation benefits equal to its share of tort damages with that of a nonnegligent employer, this passage makes clear that there is no basis for increasing the threshold figure beyond the employer's own share of tort damages. Since a totally nonnegligent employer would not have its credit right withheld until it had paid benefits in an amount equal to its negligent employee's share of the tort damages, there is no rational ground for placing this additional burden on a concurrently negligent employer.

In addition, while Rodgers' proposed rule would not actually afford the employee a "double recovery"—the employee's recovery from the third party will have been reduced by virtue of the employee's negligence—the rule would have the anomalous effect of rewarding employee negligence by increasing an employee's recovery vis-à-vis his employer whenever the em-

---

[5]Footnote 11 read: "Thus, under its proposed rule the employer herein would be relieved of all further contribution even if it is determined that employer was 85 percent at fault; credit for only 15 percent of the employee's $40,000 net settlement would effectively wipe out employer's further workers' compensation liability of approximately $5,800."

ployee's fault increases. Not only would this unfairly penalize employers, but it would undercut the deterrence rationale of the comparative negligence system by permitting a negligent employee to recapture the portion of his tort damages which he was denied in the civil action because of his own responsibility for his injuries. Such a result would hardly represent the "fair and equitable balance between the interest of the employee . . . and the interest of the employer . . ." that *Associated Construction* envisioned.[6]

Accordingly, while *Associated Construction* formally reserved decision on the issue presented here, we believe that the reasoning of the decision leaves no doubt as to the soundness of the WCAB's conclusion in this case. (See also Note, *Associated Construction and Engineering Co. of California v. Workers' Compensation Appeals Board: Comparative Negligence in the Workers' Compensation System* (1980) 68 Cal.L.Rev. 895, 905-906.)

Additional support for the WCAB's approach is provided by a number of recent cases, decided in the wake of *Associated Construction,* which have addressed a similar issue in the context of an employer's claim for reimbursement. In *Kemerer* v. *Challenge Milk Co.* (1980) 105 Cal.App.3d 334 [164 Cal.Rptr. 397], an employee brought suit against a third party, and the employer intervened and sought reimbursement for all compensation benefits that it had paid. The jury found the third party 70 percent at fault and the employee 30 percent at fault; no fault was attributed to the employer. After the trial court had granted the employer full reimbursement, the third party appealed, contending that the employee's negligence should have been imputed to his employer and that the employer's reimbursement should have been reduced accordingly. The *Kemerer* court rejected the contention,

---

[6]Indeed, an example may help illustrate how—under Rodgers' approach—a negligent employee may actually obtain a greater total recovery than a careful one. Assume that the employee has suffered $100,000 in tort damages, and that—as in this case—the employee's attorney's fees and expenses in the civil action consume 50 percent of the employee's recovery from the third party. If the third party were 100 percent at fault, the employee would receive a gross tort recovery of $100,000 and a net recovery—after deductions—of $50,000. Thus, the nonnegligent employee would receive a net tort recovery of $50,000, and—because in this hypothetical neither the employer nor employee were at all at fault and thus the employer could immediately claim its section 3861 credit—the employee would obtain no additional worker's compensation benefits unless such benefits exceeded $50,000.

On Rodgers' theory, if instead of being totally free of fault, the employee in the above hypothetical were 4 percent at fault, he would receive a greater total recovery than the nonnegligent employee. His total tort damages would be reduced by 4 percent, and his gross tort damages would thus be $96,000. Assuming that attorney's fees and expenses would still consume 50 percent of the gross recovery, his net tort recovery would be $48,000. If the employee's fault were imputed to the employer in determining the section 3861 threshold, the employer would have to pay $4,000 in benefits—the percentage of tort damages attributable to employer and employee fault—before it could claim its $48,000 credit. Thus, the 4-percent-negligent employee would receive $52,000 total recovery as compared to the $50,000 obtained by the totally nonnegligent employee. Further, the disparity would generally increase as the percentage of the employee's fault increased.

pointing out that such imputation would provide the third party with a double deduction on account of the employee's negligence and would improperly reduce the innocent employer's subrogation recovery. (See also *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 512 & fn. 4 [156 Cal.Rptr. 41, 595 P.2d 619]; *Jarvis* v. *Southern Pac. Transportation Co.* (1983) 142 Cal.App.3d 246, 256-259 [191 Cal.Rptr. 29]; *Johnson* v. *Cayman Development Co.* (1980) 108 Cal.App.3d 977, 981-983 [167 Cal.Rptr. 29]; *Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1, 6-9 [155 Cal.Rptr. 552].)

Rodgers contends that these reimbursement cases are distinguishable from this case because in the reimbursement context the imputation of employee negligence to the employer would inure to the benefit of the third party tortfeasor whereas in the credit context such imputation would benefit the employee. While the two situations do differ in this regard, in both contexts the imputation would work to the detriment of the employer, requiring it to bear a greater liability than it would otherwise have to bear. In *Associated Construction* we treated the employer's reimbursement and credit rights as parallel remedies, implying that comparative negligence principles should be applied consistently in both contexts. (22 Cal.3d at pp. 842-843.) Rodgers fails to advance any convincing reason—consistent with the rationale of *Associated Construction*—to explain why the scope of an employer's subrogation right should vary depending on whether it has paid compensation benefits before the civil judgment or after. Thus, we think the decisions refusing to impute an employee's negligence to an employer for reimbursement purposes do support the WCAB ruling here.

### III

As discussed above, the approach adopted by the WCAB in this case is consistent with both *Associated Construction* and with the post-*Associated Construction* decisions. Rodgers raises three separate arguments, however, which he claims support his proposed credit rule. None withstands analysis.

First, he maintains that a rule imputing the employee's negligence to the employer for purposes of determining the employer's credit rights is supported by this court's decision in *Witt* v. *Jackson, supra*, 57 Cal.2d at page 69. At the time of *Witt*, however, the contributory negligence doctrine barred a negligent employee from obtaining any recovery whatsoever from a third party, and *Witt*'s imputation of the employee's negligence to the employer simply had the effect of absolving the third party of any responsibility for reimbursing the employer for benefits it had paid to the negligent employee. *Witt*'s imputation rule never applied to an employer's statutory credit, because at that time if the employee were negligent, he could not

recover any tort damages which would give rise to such a credit. Thus, *Witt* provides no support for Rodgers' position.

Rodgers also claims that the WCAB's formula improperly injects the issue of employee negligence into the workers' compensation proceeding and improperly reduces the employee's compensation benefits on the basis of such negligence. This contention simply assumes its conclusion. From the employer's point of view, of course, it is Rodgers' proposed rule, rather than the formula adopted by the WCAB, that would introduce the question of employee negligence into the credit determination; the WCAB's ruling requires consideration of only the employer's negligence, a consideration of "fault" clearly sanctioned by *Associated Construction.* In like manner, the assertion that the WCAB rule permits an employer *to reduce* his workers' compensation liability by virtue of the employee's negligence erroneously assumes that the governing statutes grant an employee the right to full workers' compensation benefits in addition to the employee's civil recovery and without regard to the employer's credit. Since section 3861 does not explicitly limit or qualify the employer's right to a credit in any way, an employer could at least as plausibly maintain that the "threshold" formula adopted in *Associated Construction* and applied by the WCAB in this case provides an employee with *additional* compensation benefits solely on the basis of the employer's negligence.

Finally, Rodgers argues that in the great majority of cases in which the employee's third party action is settled and no specific apportionment of fault is determined in the civil action, the rule applied by the WCAB will add complexity and burdensome litigation to the worker's compensation proceeding, over and above that mandated by our *Associated Construction* decision. That simply is not so. As already noted, in *Associated Construction* we specifically held that in those cases in which the third party action is settled and there is no judicial determination of total tort damages or judicial apportionment of fault, "the board must determine (1) the degree of fault *of the employer,* and (2) the total damages to which the employee is entitled." (Italics added.) (22 Cal.3d at p. 843.) Thus, *Associated Construction* clearly contemplated that in such cases the WCAB would determine the degree of the *employer's* fault; it is Rodgers' proposal—not the WCAB's—that would require the board to assign a specific percentage figure to the *employee*'s fault.

Rodgers' contention on this point appears to rest on the assumption that it would be easier and less burdensome for the WCAB to determine the combined fault of the employer and employee than it would for it to determine the employer's fault alone. We can find no basis for such an assumption. As a practical matter, in determining the relative fault either of the

employer alone or of the employer and employee together, the WCAB will have to consider the role played by each of the participants—including, of course, the third party tortfeasor—in contributing to the injury. When there is fault on the part of both the employer and the employee, that "fault" will not generally appear as an indivisible whole or a single, identifiable unit; rather, in determining the combined fault of employer and employee—as Rodgers proposes—the WCAB would normally have to determine separately the relative fault of the employer and the employee and then add the two figures together. Thus, if anything, Rodgers' proposal would be the more burdensome one for the WCAB to apply.

Further, there is an additional practical anomaly to Rodgers' proposal. Under the WCAB's approach, in which the employer's credit is postponed until it pays benefits equal to its own proportional share of tort damages, the parties assume their normal adversary posture with regard to their respective conduct; the employee has the incentive to prove that the employer bears a large responsibility for the injury and that he, himself, is relatively free from fault, while the employer will attempt to demonstrate its own innocence and place the responsibility on others—the third party or employee. Adoption of Rodgers' approach—in which the employer's credit would be postponed on the basis of the combined total of employer and employee fault—would, however, create the peculiar situation in which the employee would have the financial incentive to urge that a greater degree of fault be assigned to him; the more at fault the employee is found to be, the greater the sum the employer would be required to pay to the employee before it would be entitled to claim its statutory credit. While this anomaly, in and of itself, would not necessarily preclude adoption of Rodgers' proposal, it does point up the basic irrationality—and unfairness—of the suggested rule.

IV

In sum, we conclude that the WCAB properly determined the employer's credit in this case. The decision is affirmed.

Mosk, J., Broussard, J., Shaw, J.,* and Mana, J.,* concurred.

**REYNOSO, J.**—I respectfully dissent. The employer, in my view, should pay benefits equal to the proportion of damages attributable to both the employer and the employee. Only then should the employer become eligible for a statutory credit.

A tripartite relationship exists in a lawsuit involving workers' compensation and a third party: a dispute between employer and employee is gov-

---

*Assigned by the Chairperson of the Judicial Council.

erned by workers' compensation (Lab. Code, § 3600); between employee and third party the principles of comparative negligence apply (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]); and between third party and employer the court must apply in concert the doctrines of workers' compensation, comparative negligence and joint and several liability. The problem arises in reconciling the tension between the no-fault doctrine of workers' compensation and the basic premise of comparative negligence, that liability is imposed in direct proportion to fault. Nevertheless, since in California employee recoveries are legislatively favored,[1] the fashioning of an equitable result should not affect an employee's right of recovery.

The analysis, as the majority points out, correctly begins with *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684]. The court concluded in *Associated Construction* that in a situation where the employer and the third party defendant are each partially negligent the employer must be denied reimbursement or credit "until the ratio of his contribution to the employee's damages corresponds to his proportional share of fault." (*Associated Construction, supra,* at p. 843.) The intent of the rule was to insure that the employer did not profit from his own wrong. The court expressly chose not to decide how "allegations of employee negligence . . . would affect the proportional contribution of the employer." (*Ibid.*) The majority nevertheless maintains that the instant situation is a mere extension of *Associated Construction*; the same unalloyed comparative negligence principles, it decides, should apply. It is with that conclusion I take fundamental issue.

*Associated Construction* dealt with the relationship between the employer and the third party defendant; the present case involves, in addition, the relationship between the employer and the employee. As a consequence, the policy interests that underlie the workers' compensation statutes must be weighed against the policies that underlie the doctrine of comparative negligence.

The workers' compensation statutes create a "social contract" between the employer and the employee. The employee is guaranteed recovery irrespective of fault. In exchange, the employer's duty to pay is statutorily limited. As the Court of Appeal in this case correctly stated, "The economic philosophy which supports a no-fault workers' compensation system places the economic burden of on-the-job injuries on the employer as a cost of doing business. The damage to or wearing out of human 'machinery' is

---

[1]Labor Code section 3852 grants to employees injured while employed the right to recover *all damages.*

viewed as another cost of production which should be borne by the industry. [Citation omitted.] Such a system places the burden of industrial accidents on the party who has the greatest control over workplace safety. In exchange for carrying the responsibility for injury compensation, the employer avoids the cost, delay and risk of greater liability of court proceedings. The employee receives guaranteed compensation in exchange for giving up the right to sue the employer."

Further, workers' compensation benefits are not designed as a substitute for personal injury tort damages. They differ not only in degree, but also in kind. "In tort actions damages are normally awarded for the purpose of *compensating* the plaintiff for injury suffered, i.e., restoring him as nearly as possible to his former position, or giving him some pecuniary equivalent." (4 Witkin, Summary of Cal. Law (8th ed. 1974) p. 3137 (italics in original).)[2] Since the basic purpose of tort damages is indemnification to the injured party such damages include, but are not restricted to, loss of earning power, impairment of future earning capacity, property damage, and loss of business.

In contrast, compensation benefits, as the Court of Appeal noted in its opinion in this case, "are not intended to make whole, persons who have suffered 'detriment from the unlawful acts or omission of another.' (Civ. Code, § 3281.) Unrelated to concepts of 'fault' or 'wrong,' benefits paid under the compensation system are ultimately tied to the notion that injured workers are to be compensated for their loss of competitive status in the labor market. The purpose of workers' compensation is to rehabilitate, not to indemnify. (*Solari* v. *Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 600 [30 Cal.Rptr. 407].)" Workers' compensation benefits include rehabilitation rights—rights that are not a part of civil actions. (Lab. Code, § 139.5.) "These special rights, which have no counterpart in civil or tort law, cannot be settled or commuted (Lab. Code, § 5100.6). They are specially designed to provide retraining, through government and private agencies, in order to return the injured to his or her old job or to new employment compatible with the physical impairment of the employee. Elaborate rehabilitation plans may cover many months or years and include counseling, on-the-job training, job assistance programs, schooling, tuition and maintenance benefits during the term of the plan." (Conference of Cal. Workers' Comp. Judges (1980) Civil Litigation & Workers' Comp.: Legal Practice, pp. 32-34.)

Benefits, aside from medical expenses, depend on the worker's earnings. Under sections 4653 and 4658 of the Labor Code benefits, temporary and

---

[2] See also Restatement of Torts sections 901, 903, 905, 906.

permanent, are calculated against "65 percent of the average weekly earnings" of the employee. As such, the injured employee does not recover all the costs flowing from his injury. Nor under workers' compensation is he intended to. The Legislature has recognized these distinctions between tort damages and compensation benefits saying that, "damages means the recovery allowed in an action at law *as contrasted with compensation.*" (Lab. Code, § 3209; italics added.) The Court of Appeal also noted the distinctions. In *State Comp. Ins. Fund* v. *Williams* (1974) 38 Cal.App.3d 218, 226 [112 Cal.Rptr. 226], the court said, "the amount of such an award [by the WCAB] is . . . not an element of damage insofar as the employee is concerned."

The employer's obligation to pay for all damages arising from "employment negligence"[3] (employer plus employee) derives from the nature of the tradeoff inherent in the worker's compensation system. To relieve the employer of that part of the obligation attributable to the employee's negligence is to give employers the benefit of the system while not insisting they shoulder the burden. It is noteworthy that, in the absence of a third party defendant, the employer would be obliged to pay worker's compensation up to the statutory limit, even if the employee were completely at fault. The majority is incorrect when it states that "even if the employer were an ordinary tortfeasor, it would not be liable for *that* portion of the employee's tort damages," (referring to that amount attributable to the employee's own negligence) (maj. opn., *ante,* at p. 337; italics in original) because the employer is never an ordinary tortfeasor relative to the employee. He, like the employee, is already governed by a social contract *that does not look to fault.* As such, the employer has an obligation to pay compensation proportional to all employment negligence. It only remains to demonstrate formulas that, in application, reflect such policies.

## II

Each party's liability or recovery reflects the policy considerations that govern the various parts of the tripartite relation. The correct formula is applied as follows:

(1) *The employer*: The employer receives a credit or reimbursement only if it has paid benefits greater than the proportion of damages attributable to both the employer and the employee. At no time does the employer pay more than the statutory limit set by workers' compensation.

---

[3]See Comment, *Employer Subrogation: The Effect of Injured Employee Negligence in Workers' Compensation/Third Party Actions* (1981) 18 San Diego L.Rev. 301.

(2) *The employee*: The employee receives damages in an amount equal to all damages not attributable to his own negligence. The employee also receives compensation determined in a manner that does not turn on the measure of either the employee's or the employer's negligence. The employee's compensation is limited though. He receives whichever is less: the statutory limit on compensation or the amount of damages attributable to both the employer and the employee.[4]

(3) *The third party*: The third party is responsible for the amount attributable to the third party's own negligence. In addition, if the statutory limits on compensation are less than the amount of damages attributable to the employer's own negligence then, under joint and several liability, the third party will be responsible for the difference.[5]

The equitable considerations addressed in part I compel attribution of the employee's negligence to the employer not only in the credit context but in the reimbursement context as well. If we are faithful to that equitable balance then the benefits should always accrue to the employee; no other result reasonably follows since the intent of the imputation, regardless of the context, is to give the employee the full benefit of workers' compensation in the form of uncompromised compensation. The majority correctly noted that there is no good reason "why the scope of an employer's subrogation right should vary depending on whether it has paid compensation benefits before the civil judgment or after." The formula just outlined will reach a similar result in either a reimbursement context or a credit context. As such, the majority is incorrect when it concludes that, unlike the credit context, attribution of the employee's fault in the reimbursement context leads to a third party windfall. Let us examine why.

Attribution of the employee's negligence to the employer is a mechanism, a device, that may serve different ends. As I use it, it restores to the em-

---

[4]This merely removes the third party and permits the isolation of that portion of damage flowing from the employment situation.

[5]For example, assume the third party is 50 percent at fault, the employer is 30 percent at fault and the employee is 20 percent at fault. Assume also that total civil damages have been determined to be $100,000 and the total compensation benefits paid are $25,000.

Under the formula we have discussed the employer is entitled neither to a credit nor a reimbursement because the amount of worker's compensation paid ($25,000) is less than the damages attributable to the combined employment negligence ($50,000).

The employee recovers from the third party $55,000. The employee is entitled to recover from the third party all damages not attributable to the employee's own negligence.

The third party is responsible for all damages attributable to his own negligence, and, in addition, he is responsible for the amount by which the employer's statutorily limited contribution falls short of his percentage share of responsibility.

Thus, the third party is responsible for $50,000 in damages plus the shortfall in the employer's contribution ($5,000; the employer was 30 percent responsible but only paid $25,000).

ployee a greater measure of his compensation benefits. As discussed earlier, the operating premise of workers' compensation is that the employee's compensation benefits should not be reduced because he is in part at fault for the injury. The attribution of the employee's negligence to the employer insures that result.

Nevertheless, the same attribution has been used for other ends. A case in point is *Kemerer* v. *Challenge Milk Co.* (1980) 105 Cal.App.3d 334 [164 Cal.Rptr. 397]. In *Kemerer* the third party attempted to have the employee's negligence imputed to the employer in order to gain *for itself* a windfall.[6] The manner by which they expected to accomplish this bears demonstrating.

Assume an employer is 20 percent at fault but has already paid $25,000 in workers' compensation benefits. By the majority's lights the employer is entitled to a $5,000 reimbursement. If we assume the employee was 30 percent at fault and his negligence was also imputed to the employer, the employer would be denied the reimbursement and, according to both the majority and the third party in *Kemerer,* the third party would gain $5,000.

The *Kemerer* court correctly concluded that the third party was not entitled to have its share of liability twice reduced—the consequence of applying the attribution in this manner. But the *Kemerer* court went further and reached an overbroad result: it decided as well that an employee's negligence should never be imputed to the employer.

This dissent agrees that attribution is unwarranted if it benefits the third party. But it need not. A third party windfall does *not* inevitably flow from attribution. I shall demonstrate how the proposed formula prevents that occurrence.

---

[6]Rather than increasing the employer's threshold the third party contended that the employer's reimbursement should have been reduced by an amount proportionate to the plaintiff's share of negligence.

An example of such unusual arithmetic would be where the employer and employee are together negligent 25 percent and the employer has paid $60,000 in workers' compensation. According to the *Kemerer* trial court, the employer's reimbursement would be reduced by 25 percent to $45,000. This is irrational: the 25 percent was originally 25 percent of total damages, but it has applied as 25 percent of total possible reimbursement. The correct means of imputing the employee's negligence to the employer, regardless of who intends to benefit from it, is to increase the threshold amount the employer must pay. As such, in the above example, if the employer had been 10 percent negligent and the employee had been 15 percent negligent and total damages equalled $100,000, then the employer would have been obliged to pay $25,000 to meet the threshold of all employment negligence and was, thus, entitled to a reimbursement of $35,000.

(By way of comparison, under the majority's formula the employer would have been obliged to pay $10,000 to meet the threshold of its own negligence and would, thus, have been entitled to a reimbursement of $50,000. In either event a threshold must be created.)

The relationship between the three parties is intertwined. Each party's liability affects the other two parties' recovery or liability limit. Thus, even though the focus of the instant case is on the employee-employer strand of the triangle, the third party's liability computation must be examined so that it does not prevent that equitable arrangement between the employer and employee from being put into effect.

The majority computes the third party's liability by subtracting from the total damages the damages attributable to the plaintiff, and then subtracting the amount of workers' compensation already paid. By subtracting the amount of workers' compensation already paid the third party's liability computation correctly *anticipates* the employer's reimbursement claim, *so long as the threshold equals the employer's share of responsibility.* If the threshold is changed, the amount by which the third party's liability is reduced, and the occasions when it is reduced, should coordinate with that changed threshold.

Such computations sound far more complex than they are. Rather than simply subtracting the amount of workers' compensation paid, as the majority does, courts applying the higher threshold should proceed in steps. First, they must ask, *when determining the third party's liability to the employee,* whether the employer's contribution has exceeded the threshold. If it does then the court should deduct from the third party's liability the amount by which the employer's contribution has exceeded the threshold. If the employer's contribution does not exceed the threshold, but does exceed the amount of damage attributable *to the employer alone, then there* should be neither a deduction nor an addition to the third party's liability. Finally, if the employer's contribution falls short of the amount of damage attributable to his own negligence, then the amount of the shortfall should be added, as it has always been added, to the third party's liability under joint and several liability.[7]

Thus, attribution does not necessarily lead to a third party windfall. As such *Kemerer* to the extent it does not permit third party windfalls is correct; but its overall conclusion that attribution is never warranted is incorrect.

A similar situation occurs in *Kramer* v. *Cedu Foundation Inc.* (1979) 93 Cal.App.3d 1, 6-9 [155 Cal.Rptr. 552], where the trial court reduced, once

[7]For example, assume the third party was 50 percent negligent, the employer was 30 percent negligent and the employee was 20 percent. If the employer paid $55,000 in compensation he would be entitled to a $5,000 reimbursement, and the third party's payment to the employee should be reduced by that amount. If the employer has paid anywhere from $30,000 to $50,000 the third party payment is unaffected. If the employer has paid $25,000 in compensation, then the third party must pay $5,000 in addition to the amount he owes for his own negligence, under joint and several liability.

again, the employer's reimbursement claim by an amount proportionate to the combined negligence of employer and employee.[8] Once again, the Court of Appeal threw out the baby with the bathwater: the *Kramer* court was correct insofar as it recognized the inaccuracy of the defendant's formula, but it was overbroad in concluding that, therefore, the employee's negligence could never be imputed to the employer.

In the year following *Associated Construction* this court decided *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 512 and footnote 4 [156 Cal.Rptr. 41, 595 P.2d 619]. In *Aceves* the trial court reduced plaintiff's recovery from the third party by "the proportionate amount attributable *to his employer's negligence.*" (*Aceves, supra,* at p. 513; italics added.) This court reversed saying that the proper method of determining plaintiff's recovery from the third party was to subtract both the amount of damages attributable to the plaintiff's negligence as well as the amount of damages attributable to the employer. (*Ibid.*) The court noted, in dictum, that since the employer's payment of compensation benefits had not reached a threshold equal to the damages attributable to the employer's proportional share of fault, it should be denied a claim for reimbursement. *Aceves* only dealt with the plaintiff's negligence as it affected the plaintiff's recovery from the third party. The question of how a plaintiff's negligence would affect his relationship with his employer was not addressed. Further, since the employer's compensation payments did not even reach the lower threshold (the amount of damages attributable to the employer's own fault) the issue never came before the court.

In *Johnson* v. *Cayman Development Co.* (1980) 108 Cal.App.3d 977, 981-983 [167 Cal.Rptr. 29] the Court of Appeal never addresses the question of whether the employee's negligence should be imputed to the employer. That court, without comment, merely extended *Associated Construction* without considering the added ramifications of employee concurrent negligence, nor acknowledging that *Associated Construction,* itself, had explicitly avoided deciding that question.

Only in *Jarvis* v. *Southern Pacific Transportation Co.* (1983) 142 Cal.App.3d 246, 256-259 [191 Cal.Rptr. 29] does a Court of Appeal correctly apply the majority's intended formula and implicitly support the majority's doctrine of extending *Associated Construction.* In so doing, though, it errs. The Court of Appeal extends the majority doctrine in response to what it perceives as a potential double recovery by the third party in the reimbursement context. Yet as has been demonstrated the correct response to this is not to deny the attribution of fault to the employer; rather, it is to

---

[8]See footnote 6.

refashion the manner by which the third party's liability is computed. By preventing the windfall to the third party, the Court of Appeal has reduced the employee's rightful compensation. By permitting the attribution and re-fashioning the third party's liability, instead, the employee's compensation would have been preserved and a windfall avoided.

In sum, the equitable principles that require an employer to compensate the employee for the damage flowing from all employment negligence rather than just the employer's negligence, apply with equal force in both the reimbursement context and the credit context. In addition, I conclude that the employer should be obliged to pay a threshold sum equal to the proportion of damages attributable to *all* employment negligence before becoming eligible for a credit or reimbursement.

**BIRD, C. J.**—I respectfully dissent for the reasons set forth so ably in the opinion of Justice John J. Miller of the Court of Appeal, with the concurrence of Justices Allison M. Rouse and Jerome A. Smith. Justice Miller's opinion is set forth below:*

This case calls for the resolution of yet another conflict created by the application of comparative negligence principles to our system of workers' compensation. At issue is whether the Workers' Compensation Appeals Board (hereinafter Board) may apply notions of comparative fault in determining an employer credit under Labor Code section 3861[1] with the effect of reducing an injured employee's benefit recovery by an amount attributable, in part, to the employee's own negligence.

According to the underlying principles of workers' compensation, and in recognition of our Supreme Court's application of comparative fault concepts to the employer credit provision in *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829 [150 Cal.Rptr. 888, 587 P.2d 684], we conclude that the Board may not apply comparative negligence principles in such a way as to reduce an employee's benefit recovery by amounts attributed to his own negligence. Although the court clearly sanctioned the use of comparative negligence principles in *Associated Construction,* such use must be limited to protect the fundamental "no-fault" nature of workers' compensation.

With this protection in mind, we now hold that in cases where a partially negligent employer claims a credit against the civil damages recovered by

---

*With the exception of its final paragraph, the opinion is set forth in its entirety. Additions, other than editor's added parallel citations, are bracketed.

[1]Unless otherwise cited, all code references are to the Labor Code.

a partially negligent employee from a partially negligent third party tortfeasor, a credit will only be allowed to the extent that the civil damages recovered exceed the proportional amounts of the total civil damages attributed to both the employer and the employee.

On March 4, 1974, petitioner Arthur Rodgers sustained an injury, arising out of and occurring in the course of his employment with Transcon Lines, Inc. (Transcon), when he fell from a loading dock owned and operated by the Melvin Sosnick Company (Sosnick). Petitioner sought and received workers' compensation benefits for temporary disability in the amount of $2,760. He also filed a civil action against Sosnick and was awarded a total judgment of $25,500. Negligence was attributed 25 percent to petitioner, 5 percent to Transcon and 70 percent to Sosnick. Judgment was entered and petitioner received a net recovery of $7,734.[2]

On November 19, 1979, the case was submitted to the workers' compensation judge on the issues of permanent disability benefits, lifetime medical care and credit. The judge issued his findings and award on December 14, 1979, and awarded petitioner $5,022 of permanent disability. At the same time the judge granted Transcon a credit of $6,778 against future benefit payments after an initial payment of $956.[3] Petitioner sought and was granted a Board reconsideration hearing. An order modifying the December 14, 1979, award was issued April 28, 1981, finding the initial payment due petitioner to be $1,275 and fixing the credit due Transcon at $7,734.

The Board concluded that the amount attributed to the employer's negligence should be based on total damages (here, $25,500×5 percent=$1,275) and that after this amount is paid by the employer, it is entitled to a credit equalling the total amount of the employee's recovery from the third party (here, $7,734).

Petitioner challenges the Board's order after reconsideration on the grounds that the Board acted without or in excess of its powers. Petitioner contends that by allowing Transcon a credit of all amounts recovered from Sosnick after an initial payment of an amount attributable to only Transcon's negligence, the employer is, in effect, allowed to use the employee's neg-

---

[2]Net recovery was calculated by reducing the percentage of total damages attributed to Sosnick by court costs and attorneys' fees. All dollar amounts have been rounded off to the nearest dollar amount unless otherwise indicated.

[3]Section 3861 allows an employer credit, with certain limitations, [in] the amount of any recovery by the employee from a third party action. In calculating the above credit the judge considered petitioner's total damage award of $25,500. He then subtracted the amount attributed to petitioner's own negligence (25 percent of $25,500) for a total of $19,125 nonemployee negligence. From this amount the judge determined that Transcon was responsible for $956 (5 percent of $19,125).

ligence as a defense to future payments, contrary to traditional notions of no-fault workers' compensation.

The basic tenet of the California compensation program is that the employer is held liable for employee injuries irrespective of fault. (Cal. Const., art. XIV, § 4.) The term "irrespective of fault" was intended by the Legislature to mean "irrespective of negligence," allowing benefits to be denied on a showing of "willful wrongdoing" by the injured worker. (*Matthews* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728 [100 Cal.Rptr. 301, 493 P.2d 1165].) The economic philosophy which supports a no-fault workers' compensation system places the economic burden of on-the-job injuries on the employer as a cost of doing business. The damage to or wearing out of human "machinery" is viewed as another cost of production which should be borne by the industry. (See 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 1.1, p. 13.) Such a system places the burden of industrial accidents on the party who has the greatest control over workplace safety. In exchange for carrying the responsibility for injury compensation, the employer avoids the cost, delay and risk of greater liability of court proceedings. The employee receives guaranteed compensation in exchange for giving up the right to sue the employer.

Unlike civil damages, compensation benefits are not intended to make whole, persons who have suffered "detriment from the unlawful act or omission of another." (Civ. Code, § 3281.) Unrelated to concepts of "fault" or "wrong," benefits paid under the compensation system are ultimately tied to the notion that injured workers are to be compensated for their loss of competitive status in the labor market. The purpose of workers' compensation is to rehabilitate, not to indemnify. (*Solari* v. *Atlas-Universal Service, Inc.* (1963) 215 Cal.App.2d 587, 600 [30 Cal.Rptr. 407].) In this regard, compensation benefits are fundamentally different from civil damages.[4]

Under the California program, injured workers are provided benefits for medical treatment (§ 3209.5), for temporary disability (§ 4650), for permanent disability (§ 4650), and for death benefits (§ 4701). Medical benefits are required to be furnished for all treatment necessary to cure or relieve the effects of an industrial injury. (1 Herlick, *supra,* at § 4.1, p. 90.) Temporary disability benefits, measured as a percentage of earnings at the time of the injury, are intended to provide a means of subsistence during the period of medical treatment and recuperation. (*Id.,* at § 6.1, p. 156.) Per-

---

[4]For example, civil damages typically include amounts for pain and suffering, loss of consortium and lost earnings; workers' compensation benefits typically do not. (See 1 Herlick, *supra,* at § 12.14, p. 431 for a discussion of the limited consideration of pain and suffering in determining permanent disability.)

manent disability benefits are intended to assist in the rehabilitation of the worker so that he or she may return to the labor market. (*Id.*, at § 7.1, p. 205.)

All benefits, other than medical expenses, are determined according to the worker's earnings. Under the Labor Code provisions, temporary and permanent benefits are calculated against two-thirds of a worker's actual weekly earnings.[5] In light of these statutory limitations, an injured worker does not recover all costs attributable to the injury; less than total actual lost wages are recovered and nothing is paid the worker by way of pain and suffering.

Even though a worker has given up the right to pursue a civil action against his or her employer under workers' compensation, the fact that a worker sustains an on-the-job injury does not preclude the commencement of a civil suit against a negligent third party for damages attributable to that party's contribution to the injury. (§ 3852.) Such actions are typically brought by the employee against subcontractors (see, e.g., *Morehouse* v. *Wanzo* (1968) 266 Cal.App.2d 846 [72 Cal.Rptr. 607]), and equipment manufacturers (see, e.g., *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]).

When an injured employee brings a third party action, the employer has the statutory right to be reimbursed for the compensation benefits it has paid from the amount of civil damages recovered from the third party. (§ 3860.) In addition, the employer is entitled to claim a credit against future payment of benefits based upon the third party recovery by the injured employee. (§ 3861.)

The reimbursement and credit provisions of sections 3860 and 3861 create a unique triangular relationship in workers' compensation/third party actions. In a third party action the worker stands in relation to the third party defendant on the basis of ordinary comparative negligence theory. The doctrines of comparative negligence also govern the relationship between the employer and the third party defendant on a reimbursement claim. At the same time, the worker stands in relation to the employer according to the no-fault concept of workers' compensation.

As is evidenced by the case now considered, the difficulty arises because the methodologies for calculating the employer credit and reimbursement entitlements have been considered as identical (see *Associated Construction*

---

[5](§§ 4653, 4658.) Actual benefit entitlements are determined by rate tables which use the two-thirds actual earnings calculation as a basis.

*& Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 829, 842), and yet the relationships involved in the two remedies are fundamentally different. An employer's right to a credit is distinguished from its right to reimbursement by reference to both the time and the forum in which the remedy is sought. A reimbursement claim is brought by the employer against the third party defendant in civil proceedings to recover benefits already paid. A credit claim is adjudicated directly by the Board and is a claim by the employer for credit against the future payment of benefits to the employee. In a reimbursement claim, adjudicated according to comparative negligence theory, the interests of the employee are unaffected. In a credit action before the Board, the application of comparative fault concepts would directly affect the interests of the employee and would run contrary to the no-fault nature of workers' compensation.

The decision of *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 829, represents the Supreme Court's most recent consideration of the employer credit provision of section 3861. Unlike the case at bar, the primary issue considered in *Associated Construction* was not the method of calculating a credit between a negligent employer and a negligent employee, but whether the credit right of an employer even existed after legislative amendments to the code in 1971 and in light of the California adoption of comparative negligence theory by *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].

In *Associated Construction* the court was called upon to reconcile the conflict between its holdings in *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641] and *Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884 [117 Cal.Rptr. 683, 528 P.2d 771], and the adoption of comparative negligence in *Li*. In *Witt* the court considered a reimbursement claim in a third party action wherein a partially negligent employer sought reimbursement for benefits it had paid to its injured employee. The plaintiff was a Los Angeles police officer who was injured on the job when his car was struck by the third party defendant. The negligence of the plaintiff's partner, who had negligently stopped their car, was imputed to the city who claimed a reimbursement entitlement from the defendant. The defendant argued that under the doctrines of contributory negligence, the city was precluded from claiming any reimbursement. The court agreed holding that where the negligence of the employer contributes to the worker's injury, the reimbursement claim must be denied. (57 Cal.2d at p. 73.) The court reasoned that allowing the employer reimbursement would amount to "allow[ing] him to profit from his own wrong." (*Ibid.*)

In *Roe* v. *Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d 884, decided within the year preceding *Li*, the court considered the credit claim of a

partially negligent employer. The plaintiff in *Roe* recovered $16,000 by way of settlement in an action brought against a negligent third party. Roe's employer had paid out temporary benefits under the statute and then sought a statutory credit from the Board against future benefit payments, the requested credit equalling the amount of Roe's settlement award. Under the holding of *Witt*, Roe asserted that the employer's partial negligence barred its credit claim. The Board declined to accept this argument finding that since actual negligence had not been litigated the issue of employer negligence was not before the Board. The Supreme Court reversed holding that in cases where employer negligence had not been determined the Board was directed to make the necessary factual determinations and in the presence of employer fault, the credit claim would be denied. (12 Cal.3d at p. 892.)

With the adoption of comparative negligence in *Li*, the court was faced with determining the impact of the doctrine on the holdings of *Witt* and *Roe*. In *Associated Construction*, a partially negligent employer sought a credit against future benefit payments to its nonnegligent employee to the extent that the employee's settlement award from a negligent third party exceeded the amount of damages attributed to the employer's negligence. The employee argued that under both *Witt* and *Roe* a negligent employer is barred from recovery of either credit or reimbursement. The court, in recognition of *Li* and citing the second district holding in *Arbaugh* v. *Proctor & Gamble Mfg. Co.* (1978) 80 Cal.App.3d 500 [145 Cal.Rptr. 608], rejected the *Witt* argument and modified both *Roe* and *Witt* to make them consistent with the concepts of comparative fault. Where in *Roe* and *Witt* the doctrine of contributory negligence formed the basis of the court's bar against a negligent employer's recovery, the court in *Associated Construction* applied comparative negligence and held that "the concurrently negligent employer should receive either credit or reimbursement for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery." (22 Cal.3d at p. 842.) With this holding, the doctrine of comparative negligence was introduced to workers' compensation system's proceedings.[6]

However unequivocal the adoption of comparative negligence for use in the Board's credit determinations appears in *Associated Construction*, the court nevertheless left undecided the extent of the doctrine's application

---

[6]Under *Associated Construction* the Board is now required to make two factual determinations in credit cases: 1) the degree of fault attributable to the employer, and 2) the total amount of damages suffered by the employee. (See *Associated Construction*, 22 Cal.3d at p. 845.) These determinations may either be based on the basis of a court or jury verdict or initially by the Board in the case of a third party settlement.

when both the employer and employee are negligent.[7] The subsequent cases which have interpreted the court's holding in the context of reimbursement claims are enlightening but not determinative.

In *Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1 [155 Cal.Rptr. 552], the appellate court applied *Associated Construction* to reverse a lower court judgment which limited an employer's reimbursement claim to the amount of benefits previously paid, less the percentage amount of the total third party suit award attributable to both the employer and the employee. The employee in *Kramer* was injured when he fell from a scaffold while working under the direction of his employer, a drywall contractor on a job supervised by a general contractor who was hired by the defendant Cedu Foundation. The employee was found by the jury to have been 19 percent negligent. His employer was found to have been 19 percent negligent and Cedu and the general contractor were found to have been 38 and 24 percent negligent respectively.

The appellate court reversed the lower court reimbursement award and refused to impute the employee's negligence to the employer. The court relied upon the principle enunciated in *Arbaugh,* as approved in *Associated Construction,* that the employer should receive a reimbursement "for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery." (93 Cal.App.3d at p. 7.) Although perhaps reaching the correct result for a reimbursement case,[8] the *Kramer* court applied the *Arbaugh/Associated Construction* principle to a tripart liability situation without addressing the very important fact that in neither *Arbaugh* nor *Associated Construction* was the employee negligent. As suggested, this distinction may have less impact in the reimbursement area, where the employee's interests are unaffected. However, to adopt the *Kramer* position in a credit claim situation, where the employee's interests are directly at stake, is to extend the *Arbaugh[/]Associated Construction* principle beyond the factual situation considered in those cases.

In *Kemerer* v. *Challenge Milk Co.* (1980) 105 Cal.App.3d 334 [164 Cal.Rptr. 397] the reviewing court again refused to impute the negligence

---

[7]In *Associated Construction,* and in *Arbaugh* upon which the court relied in *Associated Construction,* only the employer and the third party defendant were determined negligent. In footnote 9 of the *Associated Construction* opinion, the court stated "As no allegations of employee negligence appear on the face of this record, we do not decide here how such negligence, if established, would affect the proportional contribution of the employer." (22 Cal.3d, fn. 9, at p. 843.)

[8]As discussed above, the reimbursement remedy is asserted by the employer against the third party, a relationship outside the workers' compensation system which is controlled by comparative negligence principles. The interests involved in a credit claim are different in that they concern the employer in relation to the employee within the workers' compensation system.

attributable to the employee to the employer in calculating the latter's reimbursement entitlement. In the lower court verdict the jury found both the employee and the third party defendant partially negligent and the employer free of fault. The third party defendant attempted to reduce the amount of reimbursement due the employer by the 30 percent negligence of the employee. The appellate court refused to adopt the formula suggested by the third party finding such a calculation would allow the damages assessed the third party to be reduced twice, once from the original assignment of damages and again in calculating the reimbursement. (105 Cal.App.3d at p. 338.) As in *Kramer,* the question of computing reimbursement did not affect the amount of recovery to be realized by the employee. The court was faced with a conflict between the interests of the employer and a third party, a relationship governed by the principles of comparative negligence. Had it accepted the lower court's determination, the liability of a negligent third party would have been reduced twice to the detriment of an otherwise nonnegligent employer.

The Supreme Court applied the *Associated Construction* rule in applying comparative negligence to the verdict in *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502 [156 Cal.Rptr. 41, 595 P.2d 619]. In *Aceves* all three parties were found partially negligent by the jury. The jury awarded total damages of $22,140 and set the employee's negligence at 5 percent, the employer's negligence at 75 percent and the third party defendants' at 20 percent. Contrary to the formula adopted by *Associated Construction,* the lower court subtracted from the employee's third party recovery an amount attributable to the employer's negligence. The case was neither a reimbursement nor a credit case and the Supreme Court simply reversed the lower court's verdict and reiterated the formula it had prescribed in *Associated Construction.* (*Id.,* at pp. 512-513.)

In light of the above discussion, both *Associated Construction* and the subsequent cases which rely upon it can be distinguished from the present case either because the factual situation considered did not involve a negligent employee or because the case involved a reimbursement claim in which the employee's interests were not affected by the application of comparative negligence.[9] To the extent that our present holding can be restricted to credit claims wherein both the employer and the employee are partially negligent, the present holding is not inconsistent with any of the cited decisions.

The language of *Associated Construction* which dictates that "the concurrently negligent employer should receive either credit or reimbursement

---

[9]*Aceves* v. *Regal Pale* called for the simple application of the *Associated Construction* formula to the initial verdict and is distinguishable to the extent necessary, on this ground.

for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery" (22 Cal.3d at p. 842) is herein interpreted to hold the employer, in all credit claims, responsible for all "employment" negligence[10] as "his proportional share."

It is our conclusion that holding the employer responsible for the payment of future benefits proportional to all employment negligence before it is entitled to a credit is most consistent with the theory of no-fault compensation. To accept the position promoted by the Board would constitute an undesirable penalty to the partially negligent employee. If the employer were allowed a credit against all future payments related to the employee's proportional fault, in addition to a statutory reimbursement from the third party recovery, the employer would often be absolved of much of its statutory liability. To the extent strict statutory liability promotes greater employer concern for workplace safety, the relief of the employer's liability would run counter to the intent and origin of the workers' compensation idea.

The contention that the employer's payment of the future benefits attributable to that portion of the employee's disability caused by the employer's own negligence would constitute a "double recovery" to the employee is here, as in *Roe,* rejected. Compensation benefits are by definition an incomplete recovery for the employee. Amounts recovered by way of a third party action for pain and suffering are not reflected in compensation benefits. To the extent that benefits are calculated on the basis of only two-thirds the employee's weekly earnings, any third party recovery of lost wages will constitute the balance of wages not compensated. Amounts paid by the employer for medical treatment and temporary disability will still be deducted from the employee's third party recovery under the reimbursement provision of section 3860 to the extent the employer is entitled. Apart from this, and as stated by the Supreme Court in *Roe,* the policy against double recovery is primarily concerned with the relationship between the third party and the employer. If an arguably excessive recovery is to fall somewhere, the liberal construction of the workers' compensation statute dictates that it fall to the employee. (See *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at pp. 834-835 and *Roe* v. *Workmen's Comp. Appeals Bd., supra,* 12 Cal.3d at p. 891.)

---

[10]See Comment, *Employer Subrogation: The Effect of Injured Employee Negligence in Workers' Compensation Third Party Actions* (1981) 18 San Diego L.Rev. 301, 313.